IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

TRISH KINCAID, on behalf of herself )
and others similarly situated, )
  )
Plaintiff, )
  )
v. )     No. 1:18-cv-00707-AT
  )
COURIER EXPRESS/CHARLOTTE, )
INC., COURIER EXPRESS/RALEIGH, )
INC., COURIER EXPRESS FREIGHT, )
INC., COURIER EXPRESS US, INC., )
and IDEXX PHARMACEUTICALS, )
LLC, )
  )
Defendants. )
_____)

**<u>MEMORANDUM OF LAW IN OPPOSITION TO COURIER EXPRESS
DEFENDANTS' MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

I.      Introduction ...................................................................................1

II.     Factual Background ........................................................................2

III.    Legal Standard applicable to Defendants' Motion to Dismiss........................5

IV.     Plaintiff Has Sufficiently Pled her Claims against the Courier Express
        Defendants under the NCWHA .....................................................6

   A.   The Deductions Made from Plaintiff's pay are not Authorized by
        virtue of the federal Truth in Leasing Regulations ...............................10

   B.   There are No Facts Indicating that Defendants Obtained a Specific
        or General Authorization for the Deductions from Plaintiff's Wages ......17

   C.   Defendants Required Plaintiff and other Couriers to Shoulder
        Defendants' Business Expenses, Bringing their Compensation
        below the Promised Wage, Shift, or Route Rates. ...............................22

   D.   Plaintiff has Pled Sufficient Facts to Establish that all related
        Courier Express Defendants are Her "Employer"...................................24

V.      Conclusion ...................................................................................255

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)...............................................................................5, 6

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007)...............................................................................5, 6

*Bostick Oil Co. v. Michelin Tire Corp.*
  702 F.2d 1207 (4th Cir. 1983) ....................................................................15

*Church v. Home Fashions Int'l, LLC*
  879 F. Supp. 2d 498 (W.D.N.C. 2012) ...........................................................7

*Conley v. Gibson*
  355 U.S. 41 (1957)....................................................................................5

*Fox v. Transam Leasing, Inc.*
  839 F.3d 1209 (10th Cir. 2016) ..................................................................13

*Gaxiola v. Williams Seafood of Arapahoe, Inc.*
  776 F. Supp. 2d 117 (E.D.N.C. 2011) .............................................. 9, 20, 24, 25

*Goodman v. Praxair, Inc.*
  494 F.3d 458 (4th Cir. 2007) .....................................................................18

*Hayes v. Elon College*
  224 N.C. 11, 29 S.E.2d 137 (1944)................................................................7

*Hyman v. Efficiency, Inc.*
  167 N.C. App. 134, 605 S.E.2d 254 (2004).....................................................21

*In re Arctic Exp. Inc.*
  636 F.3d 781 (6th Cir. 2011) .....................................................................11

*Jacobs v. Central Transport, Inc.*
  891 F. Supp. 1088 (E.D.N.C. 1995) .............................................................15

*Johnson v. Diakon Logisitics*
  No. 16-cv-06776 (N.D. Ill. Mar. 28, 2018) ....................................................16

*Lease & Interchange of Vehicles*
   131 M.C.C. 141 (I.C.C. 1979) ...............................................................12

*Leverette v. Labor Works Int'l, LLC*
   180 N.C. App. 102, 636 S.E.2d 258 (2006)..........................................21

*McCown v. Hines*
   140 N.C.App. 440, 537 S.E.2d 242 (2000).............................................7

*Murphy v. First Union Capital Markets*
   152 N.C.App. 205, 567 S.E.2d 189 (2002)............................................24

*Owner–Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co., Inc.*
   367 F.3d 1108 (9th Cir.2004) ...............................................................11

*Rapczynki v. DirecTV, LLC*
   2016 WL 1071022 (M.D. Pa. Mar. 17, 2016) ......................................18

*Rehberg v. Flowers Baking Co. of Jamestown, LLC*
   162 F. Supp. 3d 490 (W.D.N.C. 2016) ........................................... 9, 25

*Rehberg v. Flowers Baking Co. of Jamestown, LLC*
   2015 WL 1346125 (W.D.N.C. Mar. 24, 2015)......................................14

*Remington v. J.B. Hunt Transport, Inc.*
   2016 WL 4975194 (D. Mass. Sept. 16, 2016) ................................. 13, 16

*Romero v. Mountaire Farms, Inc.*
   796 F. Supp. 2d 700 (E.D.N.C. 2011) ............................................ 7, 15

*Scott v. Taylor*
   405 F.3d 1251 (11th Cir.2005) ...............................................................6

*Shimko v. Jeff Wagner Trucking, LLC*
   2013 WL 10075919 (W.D. Wis. June 28, 2013)...................................12

*Stewart Trucking, Inc. v. PBX, Inc.*
   238 Neb. 958 (1991) .............................................................................13

*Stewart Trucking, Inc. v. PBX, Inc.*
   473 N.W.2d 123 (Neb. 1991) ...............................................................15

*Valadez v. CSX Intermodal Terminals, Inc.*
  2017 WL 1416883 (N.D. Cal. Apr. 10, 2017) ..................................................16

*West v. J.O. Stevenson, Inc.*
  164 F. Supp. 3d 751 (E.D.N.C. 2016) ...............................................................25

*White v. View Point Health*
  2015 WL 309440 (N.D. Ga. Jan. 26, 2015)..........................................................6

*Whitehead v. Sparrow Enter., Inc.*
  605 S.E.2d 234 (N.C. App. 2004)................................................................ 7, 23

*Young Apartments, Inc. v. Town of Jupiter, Fla.*
  529 F.3d 1027 (11th Cir. 2008) ........................................................................19

**Statutes**

N.C. Gen. Stat. § 95-25.2.......................................................... 10, 24, 25

N.C. Gen. Stat. § 95-25.6............................................................. 6, 8, 24

N.C. Gen. Stat. § 95-25.8.............................................................. passim

**Rules**

Fed. R. Civ. P. 12(b)(6)...........................................................................1, 6

**Regulations**

13 NCAC 12.0305...................................................................... 8, 19, 20

Federal Motor Carrier Safety Act. 49 C.F.R. § 376 ........................... 10, 11, 13, 16

*Lease & Interchange of Vehicles*
  49 C.F.R. Part 1057, 3 I.C.C.2d 92 (I.C.C. Oct. 10, 1986) ..................................12

## I.      Introduction

In this wage and hour class action, Defendants Courier Express/Charlotte, Inc., Courier Express/Raleigh, Inc., Courier Express Freight, Inc., Courier Express US, Inc.  ("Courier Express Defendants") seek to partially dismiss Plaintiff Trish Kincaid's Complaint for failure to state a claim. Specifically, Defendants argue that dismissal is required under Fed. R. Civ. P. 12(b)(6) because, according to Defendants, the facts asserted in Plaintiff's Complaint somehow demonstrate that Defendants' deductions taken from Plaintiff's pay and their failure to pay Plaintiff all promised wages per shift were authorized and lawful. However, even a cursory review of Plaintiff's Complaint and the "independent contractor agreement" that Courier Express Defendants have asked the Court to consider (but that they have not submitted and is attached hereto as Exhibit 1), demonstrate that Plaintiff has stated a facially sufficient claim that 1) she was an "employee" of Courier Express Defendants; 2) Courier Express Defendants deducted amounts from her pay without authorization; and 3) Plaintiff did not receive all earned wages because she was required to bear significant business expenses of Defendants that decreased her pay below what was promised.  As a result, Defendants' motion should be denied in full.[1]

---

[1] In the alternative, should the Court find that Plaintiff's Complaint should merely contain more thorough allegations regarding all of the specific types of deductions taken from her pay, the specific expenses she incurred, or Defendants' failure to obtain lawful authorization for all of the unlawful deductions, Plaintiff should be given leave to amend her Complaint to assert these facts.

## II.    Factual Background

The Courier Express Defendants contract with various companies to perform pick-up and delivery services of supplies, materials, and medical specimens. Dkt. 1, Compl., at ¶ 26.  In order to make these pick-ups and deliveries, Courier Express Defendants contract with individuals like Plaintiff, assigning specific pick-ups and deliveries to Plaintiff and other couriers on a daily basis.  *Id.*

In order to work for the Courier Express Defendants, couriers are required to sign a form "independent contractor agreement." *Id.* at ¶ 27.  Although they are classified by the Courier Express Defendants as independent contractors, Plaintiff and other delivery drivers are, in reality, employees subject to extensive control of the Courier Express Defendants. *Id.* at ¶¶ 2, 27.  For example, under the terms of the independent contractor agreement, the Courtier Express defendants reserve the right to terminate couriers for any reason.  *Id.* at ¶ 28.

Plaintiff and other couriers work assigned shifts or "runs" during which they begin their shift at a time assigned by Courier Express Defendants. *Id.* at ¶ 30. Before the beginning of each shift, Courier Express Defendants electronically transmit the assigned route to each courier, which lists each stop that they must make during the shift and the time that they must arrive. *Id.* at ¶ 31.  Plaintiff and other couriers work six days, a week, averaging 48 hours a week.  *Id.* at ¶ 24.

Courier Express Defendants require Plaintiff and other couriers to wear a shirt or vest with a "Courier Express" logo, and to have a "Courier Express" magnetic logo on their car at all times while making deliveries. *Id.* at ¶ 34.  Plaintiff and other couriers are also required to purchase and carry a cooler for storing lab specimens. *Id.* at ¶ 35.  Throughout the day, Courier Express Defendants track each courier's progress via GPS, and couriers are required to have their GPS on at all times so that Defendants can track them. *Id.* at ¶ 33.  The couriers are required to follow the route and perform the pick-ups in the exact order set out by the Courier Express Defendants; when Plaintiff and other couriers attempted to perform the pick-ups in a different order, they were reprimanded.  *Id.* at ¶ 32.

Plaintiff and other couriers are paid a set amount per "run" or shift. For example, the rate for the "evening run" on Monday through Friday is $115, while the "day run" is $80/shift. *Id.* at ¶ 37.  These rates are unilaterally determined by the Courier Express Defendants, and couriers cannot negotiate higher amounts, nor can they negotiate directly with Courier Express Defendants' customers regarding the price of their delivery services.  *Id.*

Although Plaintiff and other couriers routinely work more than 40 hours a week, they do not receive a premium for overtime hours worked.  *Id.* at ¶ 38. Plaintiff and other couriers received their weekly pay on a "ComCard" and were charged a fee to retrieve the money from the card. *Id.* at ¶ 39.  In addition, the Courier

Express Defendants deduct various amounts from the couriers' pay on a weekly basis; for example, Courier Express Defendants deduct approximately $50 per week for "insurance" charges for a worker's compensation insurance policy, and they deduct an additional amount each week for use of the software application through which couriers receive their work assignments. *Id.* at ¶ 40.

The independent contractor agreement, which Defendant has requested that the Court consider at the motion to dismiss stage, lists nineteen separate deductions that may be taken from Plaintiff's pay or the pay of other couriers, the majority of which do not include any proposed "amount" of the deduction. *See* ICA, Ex. 1, at p. 15. For example, Courier Express Defendants may deduct any amount for a "cargo claim" if there is a customer that claims that a specific delivery was delayed or contaminated, or if the customer's signature is merely illegible and the delivery cannot be "verified." ICA, Ex. 1, at p. 5. Along with "cargo claims," Courier Express Defendants also may deduct amounts in the "actual" value for any fines, penalties, or "other operating expenses," none of which have any specific amount of the deduction listed in the ICA. *Id.* at p. 15. The contract also provides Courier Express Defendants with the right to "charge back" any additional deduction that they believe the driver is "responsible for" under the agreement. *Id.*

Plaintiff and other couriers perform their work in their own personal vehicles, and therefore they also pay a substantial amount of Defendants' business expenses, such as the costs of fuel and vehicle maintenance.  *Id.* at ¶ 41.

### III.    Legal Standard applicable to Defendants' Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

As one court in this District observed when confronted with a motion to dismiss in an FLSA overtime case, though *Iqbal* and *Twombly* arguably tightened the pleading standards required to state a claim for relief, they "did not, however, dispense with common sense, and there remain areas in a given complaint that can be inferred when they are, for example, glaringly obvious."  *White v. View Point Health*, 2015 WL 309440, at *1 (N.D. Ga. Jan. 26, 2015) (denying defendant's motion to

dismiss plaintiff's claim that employer failed to pay overtime required under the FLSA).

In considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Scott v. Taylor,* 405 F.3d 1251, 1253 (11th Cir.2005). The test for the sufficiency of a pleading is "context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal,* 556 U.S. at 663-64 (citing *Twombly*, 550 U.S. at 556).

Here, Plaintiff has clearly stated a claim that is plausible on its face for recovery of unpaid wages and unlawful wage deductions, and the Courier Express Defendants' motion to dismiss must be denied.

### IV.   Plaintiff Has Sufficiently Pled her Claims against the Courier Express Defendants under the NCWHA

In this action, Plaintiff alleges that she and other couriers were "employees" of the Courier Express Defendants, and that Defendants violated N.C. Gen. Stat. § 95-25.6 and N.C. Gen. Stat. § 95-25.8 by failing to pay Plaintiff and other couriers their legally due wages on their regular payday and by unlawfully withholding and diverting wages without authorization and for purposes that were not permitted by law.[2]  Compl. ¶¶ 61-70.

_____

[2]      According to North Carolina caselaw, there are generally eight factors which determine "employee status" under the NCWHA's "right to control" test:

Under N.C. Gen. Stat. § 95-25.8, an employer may only withhold or deduct portions of an employee's wages under the following three scenarios: (1) if they are authorized by state or federal law; (2) if the employee provides a specific authorization (discussed in greater detail below); or (3) if the employee provides a general, or blanket, authorization (also discussed below). *See* N.C. Gen. Stat. § 95–25.8(a); *Whitehead v. Sparrow Enter., Inc.*, 605 S.E.2d 234, 238 (N.C. App. 2004); *see also Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 714 (E.D.N.C. 2011). As the Courier Express Defendants note, even if the deduction is appropriately authorized, the deduction is still improper and the amount is still recoverable under Section 95-25.8 if the deduction is itself illegal; for example if the deduction requires the employee to bear the employer's portion of worker's

---

The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

*McCown v. Hines,* 140 N.C.App. 440, 443, 537 S.E.2d 242 (2000) (quoting *Hayes v. Elon College,* 224 N.C. 11, 16, 29 S.E.2d 137 (1944)). "No one factor is determinative." *Id.; see generally Church v. Home Fashions Int'l, LLC*, 879 F. Supp. 2d 498, 504 (W.D.N.C. 2012), aff'd, 532 F. App'x 345 (4th Cir. 2013), and aff'd, 532 F. App'x 345 (4th Cir. 2013). Defendants do not argue that Plaintiff has failed to plead sufficient facts which could establish here status as an employee under the "right to control" test.

compensation insurance contributions (which, by statute, are required to be borne by an employer and may not be shifted to employees).  *See* 13 NCAC 12.0305(g).

Plaintiff has alleged in her Complaint that Courier Express Defendants took various deductions from her pay that were not authorized by state or federal law, were not supported by appropriate specific or general written authorization from the employee, and that are otherwise unlawful (even if supported by such authorization). Dkt. 1, Compl., at ¶¶ 61-72.  Courier Express Defendants have moved to dismiss these wage deductions claims on the grounds that the deductions were authorized by the federal Truth in Leasing regulations and through written authorizations of Plaintiff and other drivers; however, there are no facts in the Complaint suggesting that the Courier Express Defendants can satisfy any of the criteria necessary to establish their affirmative defense that their wage deductions were authorized, and this portion of Defendants' motion must be denied.

Plaintiff also alleges that she and other couriers were not paid all wages due, as the wage deductions and out-of-pocket expenses incurred on Defendants' behalf in furtherance of Defendants business brought their wages below Plaintiff's legally owed and promised wages.  N.C. Gen. Stat. Ann. § 95-25.6 requires that "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday."  An employer may be found to violate the statute where the employee bears the employer's business expenses, thus reducing her earnings below

the promised wage.  See *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117, 132 (E.D.N.C. 2011) (finding that "[d]efendants have also violated the NCWHA by shifting the cost of visa, transportation and border crossing expenses to [plaintiff] and other members of the NCWHA class to the extent those deductions brought their pay below the promised wage").  Courier Express Defendants argue that this claim should also be dismissed, confusingly suggesting that Plaintiffs received all promised and due wages because she and other couriers agreed to bear these business expenses such as fuel and vehicle maintenance on Defendants' behalf.  This is not a recognized defense to Plaintiff's wage payment claim, and Defendants' motion must be denied on this issue as well.  *See Rehberg v. Flowers Baking Co. of Jamestown, LLC*, 162 F. Supp. 3d 490, 506 (W.D.N.C. 2016) ("the stated purpose of the NCWHA… clearly indicate[s] that employers should not be permitted to contract around proper payment of their employees").

Finally, Courier Express Defendants argue that Plaintiff has not stated a claim for relief against several of the Defendants that are not named in her "independent contractor agreement" (i.e., Courier Express/Raleigh, Courier Express Freight, and Courier Express US).  However, the NCWHA contains a broad definition of who may be an "employer" or "joint employer" under the statute, *see* N.C. Gen. Stat. § 95-25.2, and Plaintiff has sufficiently pled that the four Courier Express Defendants jointly controlled her work such that they were her employer.  To the extent that one

of these entities was less involved in the control or supervision of Plaintiff's work, as Defendants' now claim, that is a question to be resolved after discovery on a full factual record at summary judgment or at trial.

Accordingly, as discussed in greater detail below, the Courier Express Defendants' motion must be denied in full.

### A. The Deductions Made from Plaintiff's pay are not Authorized by virtue of the federal Truth in Leasing Regulations

Contrary to Defendants' assertions, the Truth in Leasing ("TIL") regulations[3] do not authorize the deductions taken by Defendants from Plaintiff's pay.[4] There is some question as to whether these regulations apply at all in the present case, since, as Defendants acknowledge, Plaintiff used her own personal car to make deliveries for Defendants, as opposed to a truck that is subject to federal motor carrier and leasing regulations. In any event, the TIL regulations were drafted to ensure that certain terms be included in leases.[5] The purpose of these regulations is to protect

---

[3] 49 C.F.R. Part 376 (1979) (amended 2018).

[4] This is especially true where the deductions are for an illegal purpose, such as requiring employees to pay for worker's compensation or similar insurance; under the NCWHA, because the employer cannot withhold such wages for a deduction that is considered illegal or the employer failed to obtain the proper authorization prior to taking such withholding.  See § 95.25.8(a); *see also* 13 NCAC 12.0305(g).

[5] For example, the Regulations specify that any "lease" under the regulations must identify the equipment used for service in accordance with the requirements of the Federal Motor Carrier Safety Act. 49 C.F.R. § 376.11. The agreement must also grant to the lessee "exclusive possession, control, and use of the equipment" that is "leased" for carrier services. 49 C.F.R § 376.12(c)(1). The ICA at issue here may

10

truck drivers from abusive financial practices by the carrier companies who contract with them for their services. *See Owner–Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co., Inc.*, 367 F.3d 1108, 1115 (9th Cir.2004); *In re Arctic Exp. Inc.*, 636 F.3d 781, 795 (6th Cir. 2011). In other words, the TIL Regulations require that the motor carrier (allegedly Courier Express in this case) specify the lease payments, terms and conditions of the lease, etc., so that the truck owner (Plaintiffs in this case) is not fleeced by the motor carrier.[6]

Because these regulations are intended for the benefit of Plaintiffs and other "owners" of vehicles, the regulations were obviously not intended to circumvent or curtail the protections of state wage and hour laws enjoyed by these same individuals. The Interstate Commerce Commission explicitly stated that it "did not intend that its

_____

nominally include this language, but then it proceeds to state the contrary that the driver may use the equipment to perform services for others. Thus, it is questionable whether the ICA complies with the terms of the Truth in Leasing regulations and that they are therefore inapplicable in this case.

[6] Specifically, the purposes of the regulations are as follows:

(1) to simplify existing and new regulations and to write them in understandable English; (2) to promote truth-in-leasing-a full disclosure between the carrier and the owner-operator of the elements, obligations, and benefits of leasing contracts signed by both parties; (3) to eliminate or reduce opportunities for skimming and other illegal or inequitable practices; and (4) to promote the stability and economic welfare of the independent trucker segment of the motor carrier industry.

*Shimko v. Jeff Wagner Trucking, LLC,* 2013 WL 10075919, at *2 (W.D. Wis. June 28, 2013) (quoting *Lease & Interchange of Vehicles,* 131 M.C.C. 141 (I.C.C. 1979)).

leasing regulations would supersede otherwise applicable principles of State tort, contract, and agency law."[7] *Lease & Interchange of Vehicles (Identification Devices)* (49 C.F.R. Part 1057), 3 I.C.C.2d 92, 93 (I.C.C. Oct. 10, 1986) (discussing carrier liability). The Commission explained that "[o]ur regulations should have no bearing on this subject" when "[a]pplication of State law will produce appropriate results." Id. Courts have also found that Congress "has not comprehensively and exclusively legislated on the subject of interstate motor carrier leases and thereby occupied the entire field of law for leases involving interstate motor carriers." *Stewart Trucking, Inc. v. PBX, Inc.*, 238 Neb. 958, 965 (1991).

Beyond the clear statutory purpose, the plain language of TIL also demonstrates that the regulations are inapplicable in this context and do not "authorize" the unlawful deductions for which Plaintiffs seek recovery.  The regulations make clear that "[n]othing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee.'" 49 C.F.R. § 376.12(c)(4)); *see also J.B. Hunt*, 2016 WL 4975194, at *5 ("the regulations

---

[7] Consistent with the view of the ICC, the federal FLSA, which deals directly with employees' rights to wages, specifically permits states to provide wage protections to workers that are more generous than the rights guaranteed under federal law, which is exactly what North Carolina has done through enactment of the NCWHA.  *See* 29 U.S.C. § 218.

are explicitly agnostic on the issue of the carrier-driver relationship.").  Indeed, the regulations Defendant cites relate to the relationship between trucking companies and **independent contractor** drivers.  *Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1215 (10th Cir. 2016) ("Congress's substantive purpose in authorizing the [TIL] Regulations was . . . to address many of the inequities in the lessor/lessee relationship between carriers **and independent truckers**") (citations omitted, emphasis added).

The NCWHA, by contrast, applies to companies' relationships with their **employee** drivers. Accordingly, Defendants' suggestion that these regulations apply to its relationship with its drivers is based on the assumption that these drivers have been properly classified as independent contractors, an assumption that is fundamentally at odds with Plaintiff's misclassification allegations in the Complaint (which must be taken as true at the motion to dismiss stage).[8]  In other words, either

---

[8] The claims here are nearly identical to those asserted in *Rehberg v. Flowers Baking Co. of Jamestown, LLC*, 2015 WL 1346125, at *8 (W.D.N.C. Mar. 24, 2015), a case in which a group of delivery drivers alleged that they were misclassified as independent contractors, that they were employees under the NCWHA, and that they were entitled to recover deductions taken from their wages.  In that case, the defendant made a similar argument to that asserted by the Courtier Express Defendants here – that Plaintiff's wage deductions claims failed because they "are not paid "wages" within the meaning of the NCWHA."  *Id.*  The court rejected this argument, observing that "the entire premise of Plaintiff's claims is that distributors are employees, not independent contractors, and that as such, they are entitled to certain benefits, including wages. The court will therefore allow Plaintiff's claim on wage deductions to stand…."  *Id.*  The court in *Rehberg* also held that these wage deductions claims were susceptible to resolution on a classwide basis and certified a class of drivers under Rule 23.  *See id.*

the drivers are employees pursuant to the NCWHA, , in which case the IWPCA applies and federal regulations relating to independent contractor drivers are inapplicable, or the drivers are independent contractors, in which case the NCWHA does not apply.[9]  Plaintiff's claims for misclassification and improper deductions under the NCWHA are therefore wholly outside the purview of the TIL Regulations, which address the terms of a lease between a truck driver and a transportation company.

Indeed, a federal  court considering the identical argument (made by the same counsel) in a case in Illinois found that the TIL regulations neither preempt the deductions claims made by drivers alleging misclassification under Illinois law,[10] nor give the defendant permission to make similar deductions from the driver's wages:

---

[9] A number of courts that have addressed the preemptive effect of ICC regulations in other contexts have held that they do not preempt state claims. In *Jacobs v. Central Transport, Inc.*, the court held that ICC regulations did not preempt state unfair and deceptive trade practices claims, holding that "[n]othing in the ICC regulation suggests that 'Congress has manifested a clear intent to displace state regulation of unfair trade practices.'" 891 F. Supp. 1088, 1112 (E.D.N.C. 1995) aff'd in part, rev'd in part on other grounds, 83 F.3d 415 (4th Cir. 1996) (quoting *Bostick Oil Co. v. Michelin Tire Corp.*, 702 F.2d 1207, 1219 (4th Cir. 1983)). In *Stewart Trucking, Inc. v. PBX, Inc.*, the court held that the Interstate Commerce Act and the ICC regulations did not preempt state contract law. 473 N.W.2d 123, 127-28 (Neb. 1991).

[10] Similarly, in *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 710 (E.D.N.C. 2011), the district court held that a plaintiff's claims under the NCWHA to recover unlawful deductions from wages are not preempted by the FLSA and the court certified a class of 2,000 workers to pursue these claims against a defendant.

"the Court does not read the Regulations as providing for the deductions at issue in all trucking contracts in general.  It is clear from the plain language of the Regulations that they simply require that, if certain arrangements are made between an owner-operator and a carrier, those arrangements should be included in the written lease." *Johnson v. Diakon Logisitics*, No. 16-cv-06776, ECF No. 98, pp. 12-13 (N.D. Ill. Mar. 28, 2018) (attached hereto as Exhibit 2). Thus, for example, 49 C.F.R. § 376.12(j)(1) "does not say that a charge back for insurance is allowed under all circumstances, including those in the present case. Instead, it simply contemplates that a driver and a carrier might agree to a charge back provision and, if so, the provision should be spelled out in their lease." *Id.* at p. 13. This reasoning is equally applicable to the present case.

The Defendants point to two cases in which courts have found that plaintiffs' wage deductions claims for escrow fund and cargo damage deductions were preempted by the TIL regulations. *See Valadez v. CSX Intermodal Terminals, Inc.*, 2017 WL 1416883, at *9 (N.D. Cal. Apr. 10, 2017); *Remington v. J.B. Hunt Transport, Inc.*, 2016 WL 4975194, at *3 (D. Mass. Sept. 16, 2016). These cases in no way undermine Plaintiff's wage deductions claims here. First, in this case the Courier Express Defendants do not argue that the wage deductions claims are preempted under the Supremacy Clause; instead, they argue that the regulations specifically authorize the deductions that they took from Plaintiff's wages, which is

15

not true based on the clear language of the regulations (discussed above).  Second,

these unreported federal district court cases from other jurisdictions are not binding

on this court, and the more recent *Diakon Logisitics* is more directly on point.  Third,

Plaintiff respectfully suggests that these two decisions were wrongly decided

because, as discussed above, the regulations were specifically intended not to have

any effect on state law's affecting contractual and employment relationships.  Fourth,

in both of those cases, the owner/operators were over the road truck drivers who were

leasing their trucks to the motor carriers to carry freight as prescribed by the motor

carrier with different freight being carried on different days, which is more akin to the

type of trucking and leasing arrangements which were intended to be targeted by the

TIL regulations.  Here, by contrast, the drivers use their own, personal vehicles and

all they do is deliver and pick up medical specimens, day in and day out, on the same

basic routes.  In other words, the facts here do not even approach the owner/operator

arrangements in those other two cases.

      In sum, the Courier Express Defendants' attempt to use the TIL regulations to

argue that certain deductions from Plaintiff's pay were "authorized" by federal law

fundamentally misconstrues the purpose of these regulations and the nature of

Plaintiff's claims under the NCWHA.  That portion of Defendants' motion seeking

must be denied.

### B. There are No Facts Indicating that Defendants Obtained a Specific or General Authorization for the Deductions from Plaintiff's Wages

Courier Express Defendants next argue that Plaintiffs failed to allege a lack of written authorization for the wage deductions described in their Complaint. This argument is misplaced for several reasons. First and foremost, it Plaintiffs' burden at the pleading stage and at trial to merely demonstrate that the wage deductions occurred, and it is Courier Express Defendants who will bear the burden of establishing that the deduction were properly "authorized" as an affirmative defense. *See Rapczynki v. DirecTV, LLC*, 2016 WL 1071022, at *9 (M.D. Pa. Mar. 17, 2016) (denying defendant's motion to dismiss plaintiff's wage deductions claims under Pennsylvania law because plaintiff had no obligation assert facts related to defendant's "affirmative defense that the chargebacks were lawful…."). Plaintiff was not obligated to establish by way of her Complaint the Defendants' inability to succeed on their affirmative defense, and therefore Defendants' argument on this point should be disregarded entirely. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007) (holding that plaintiff is not required "to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised").

Any potential "authorization" of the deductions is also irrelevant because many of the deductions were for an illegal purpose. Under the NCWHA, the employer

cannot withhold such wages for a deduction that is considered illegal.  The

regulations provide the following:

> Authorizations for deductions that are not permitted by law are invalid. For example: (1) G.S. 97-21 invalidates agreements by an employee to pay any portion of a premium paid by his or her employer to a workers' compensation insurance carrier; (2) 13 NCAC 07F .0101(a)(2) requires the employer to provide, at no cost to the employee, all personal protective equipment which the employee does not wear off the jobsite for use off the job.") If an employer withholds or diverts wages for purposes not permitted by law, the employer shall be in violation of G.S. 95-25.6 or G.S. 95-25.7, or both, even if the employee authorizes the withholding in writing pursuant to G.S. 95-25.8(a), because that authorization is invalid.

13 NCAC 12.0305(g).  Thus, Plaintiff's allegation that Defendants deducted amounts

from her pay that were illegal, such as deductions for worker's compensation,[11]

renders any analysis of the Defendant's purported "authorizations" completely

unnecessary at this stage, because even if the authorizations were appropriately

obtained they are "invalid."

---

[11] Defendants dispute Plaintiff's characterization of the insurance charges as "worker's compensation" insurance and insist that the insurance charge was, in fact, occupational accident insurance.  *See* Dkt. 52-1 at 19. However, for purposes of a Motion to Dismiss, Plaintiff's allegations must be taken as true and construed in the light most favorable to her. *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1037 (11th Cir. 2008).  Defendants ask the Court to engage in fact-finding regarding whether the purported occupational accident insurance is dissimilar to worker's compensation coverage, Dkt. 52-1 at 13-15, but this is improper at the motion to dismiss stage, and would require the Court's review of the relevant policy or policies to make such a determination.

To the extent the Court wishes to address whether the Complaint contains sufficient facts asserting that the wage deductions were unauthorized, the relevant criteria is as follows:  a specific authorization to deduct wages requires an employer to have written authorization from the employee which (i) is signed on or before the payday(s) for the pay period(s) from which the deduction is to be made; (ii) indicates the reason for the deduction; and (iii) states the actual dollar amount or percentage of wages which shall be deducted from one or more paychecks. *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117, 131 (E.D.N.C. 2011) (*quoting* N.C. Gen. Stat. § 95–25.8(a)(2)).  Moreover, "the employee shall be given a reasonable opportunity to withdraw the authorization," *see* N.C. Gen. Stat. Ann. § 95-25.8(a)(2), defined as "at least three calendar days from the date of the employer's notice of the actual amount to be deducted or the employee's written notice of withdrawal of the authorization." 13 NCAC 12.0305 (c).

Contrary to Defendants' assertions, Plaintiffs' complaint sets forth adequate allegations that the deductions made by Defendants were not authorized based on the relevant criteria. Plaintiffs only received one initial document – their "independent contractor agreement" – which mentioned nineteen chargebacks which may be made from their pay, the majority of which do not designate any specific amount for the deduction.  Drivers were never provided three-days advance notice of when these deductions would be taken, nor an accompanying opportunity to withdraw that notice

on each occasion.  In fact, once drivers have agreed to the deductions in these unspecified amounts, the ICA does not permit them to make any unilateral changes to the contract terms (such a withdrawing their assent to "charge backs") without Defendants' mutual written consent.  ICA, Ex. 1, at p. 10.  In contrast, the cases relied upon by Defendants make it clear that if a Plaintiff is found to have given a specific authorization for a deduction in the initial hiring documents (as Defendants argue occurred here through the ICA), the authorization is insufficient *unless* Plaintiff is given the opportunity to withdraw the authorization on a regular basis each time the deduction is to be assessed.  *See generally Leverette v. Labor Works Int'l, LLC*, 180 N.C. App. 102, 113, 636 S.E.2d 258, 265 (2006) (finding specific authorization for deduction where the "employee elected at the start of each day on which he chose to work whether to authorize defendants to take any wage deductions"); *Hyman v. Efficiency, Inc.*, 167 N.C. App. 134, 141, 605 S.E.2d 254, 259 (2004) (finding a sufficient specific authorization where "the deductions for transportation expenses are not automatic. They are conditioned upon the class members specifically requesting use of the van pool each morning.").  Here, the opposite was true; once the initial authorization was allegedly provided through the ICA (as Defendants argue), the deduction became automatic and could only be withdrawn with Defendants' written consent, which they were under no obligation to provide.  And in many cases, the ICA was so vague as to provide no information regarding what Plaintiff was actually

agreeing to; for example, the deductions were for unspecified purposes, such as "penalties" and "other operating expenses," with no explanation given in the purported "authorization" as to what these might refer to. The "cargo claims" deduction was only slightly better explained, but is particularly oppressive, as it allowed Courier Express defendants to deduct the "actual amount" of a claim by one of its customers that a delivery was delayed or improperly recorded, such as if the signature for the delivery was illegible.

In addition, the amounts of deductions at issue were not specifically spelled out in the ICA. The deductions set out in Plaintiff's Complaint (Dkt. 1 at ¶¶ 39-40) and discussed in Defendants' Motion to dismiss, including insurance, the software user license, and the charges associated with the use of the ComData card, were neither specifically spelled out in the section of Plaintiff's Agreement describing chargebacks nor authorized by Plaintiff in writing at any later time.[12] With regard to these charges, Defendants did not provide Plaintiff with a document stating "the actual dollar amount or percentage of wages which shall be deducted from one or more paychecks." N.C. Gen. Stat. § 95–25.8(a)(2)).

---

[12] A list of "charge back" items appears on page 15 of Plaintiff's Independent Contractor Agreement. The chart listing these items and the associated amounts does not mention the amount of any insurance charges, nor does it list charge backs for software usage, or charges for the ComData card.

Courier Express Defendants do not argue that they had a general or blanket authorization, nor could they.  "Before an employer may deduct wages under a blanket authorization, it must first provide the employee: (1) advance notice of the specific amount of the proposed deduction; (2) a reasonable opportunity of at least three calendar days from the employer's notice of the amount to withdraw the authorization." *Whitehead*, 605 S.E.2d at 238 (*citing* N.C. Admin. Code tit. 13, r. 12.0305(d)).  Plaintiff and the other couriers did not provide a general, or blanket, authorization for these deductions since, once again, they did not receive "advance notice of the specific amount of the proposed deduction" nor is there any assertions in the Complaint or elsewhere that they were ever given an opportunity to withdraw their authorization, which is a prerequisite to Defendants establishing their affirmative defense that the deduction was appropriately authorized. *Whitehead*, 605 S.E.2d at 238 (*citing* N.C. Admin. Code tit. 13, r. 12.0305(d)).

### C. Defendants Required Plaintiff and other Couriers to Shoulder Defendants' Business Expenses, Bringing their Compensation below the Promised Wage, Shift, or Route Rates.

As set out in Plaintiff's Complaint, the Courier Express Defendants forced her and other couriers to incur business expenses which should have properly been borne by Defendants. *See* Dkt. 1, Complaint, at ¶¶ 35, 41. These include the costs of a specimen cooler as well as fuel and vehicle maintenance. *Id.* As Defendants acknowledge, workers can bring claims under the NCWHA for unreimbursed

expenses where these expenses bring employees' compensation below their "promised wage". *See Gaxiola*, 776 F.Supp.2d at 132.  Defendants contend, however, that Plaintiff's and other couriers' "promised wage" is defined as "the total compensation for everything furnished, provided or done by Plaintiff." Dkt. 52-1 at 25. Relying on this circular definition, Defendants argue that it is impossible that the deductions taken out of the couriers' pay brought their wages below the "promised wage," suggesting, in effect, that the promised wage is whatever amount the couriers ultimately take home after the expenses are incurred.  Defendants' argument defies logic and flies in the face of the very purpose of the North Carolina wage statute.

"The NCWHA . . . requires employers to pay their employees at least the promised wage for each hour or part of an hour that they perform labor for their employers." *Gaxiola*, 776 F. Supp. 2d at 132 (citing N.C. Gen. Stat. § 95–25.6). "Wages include compensation for labor or services rendered by an employee whether determined on a time, task, piece, job, day, commission, or other basis of calculation ..." *Murphy v. First Union Capital Markets,* 152 N.C.App. 205, 208, 567 S.E.2d 189, 191–92 (2002) (*quoting* N.C. Gen.Stat. § 95–25.2(16)) (internal quotation marks omitted). In this case, the logical definition of "wages" promised to Plaintiff and other couriers would be the rate they receive for each of their scheduled shifts or "runs" – i.e. $115 for each evening "run" and $80 for each day "run." *See* Dkt. 1 at ¶

37. To the extent the fuel, maintenance and specimen cooler expenses cut into those costs and reduced Plaintiffs' earnings they are in violation of the NCWHA.

Defendants' argument that Plaintiffs "agreed" to bear these expenses is misplaced. As the court recognized in *Gaxiola*, in a situation where plaintiffs are forced to shoulder a Defendant's business expenses, and where those expenses bring their earnings below the promised wage, they are recoverable, ***regardless of whether or not they were agreed to***. *See generally Gaxiola*, 776 F.Supp.2d at 132 ("Defendants have also violated the NCWHA by shifting the cost of visa, transportation and border crossing expenses to *Gaxiola* and other members of the NCWHA class to the extent those deductions brought their pay below the promised wage.").  Indeed, in every case where an employee incurs business expenses on his or her employer's behalf, there will have been some "agreement" by the employee to incur these expenses, even if the agreement is merely implied; this does not provide Defendants' with a defense to a wage payment claim under North Carolina law. *See Rehberg*, 162 F. Supp. at 506  ("the stated purpose of the NCWHA… clearly indicate[s] that employers should not be permitted to contract around proper payment of their employees").

### D. Plaintiff has Pled Sufficient Facts to Establish that all related Courier Express Defendants are Her "Employer"

Under North Carolina law, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." N.C. Gen. Stat. §

95-25.2. When interpreting this broad definition of an "employer" under the NCWHA, courts have observed that wage cases such as this "may be litigated against multiple defendants under the theory that they form a single 'employer' under either the 'joint employment' or 'integrated employer' theories of liability." *West v. J.O. Stevenson, Inc.*, 164 F. Supp. 3d 751, 763 (E.D.N.C. 2016). The Courier Express Defendants argue that only one entity – the entity identified in Plaintiff's ICA – may be considered an employer under the statute, but there is no support for this narrow reading of the "employer" definition.  For example, in *West*, the court explained that "[s]eparate entities may be a single, 'integrated' employer where they share common management, have related operations, share control of labor relations, and have a degree of common ownership or financial control." *Id.* at 764.  Plaintiff has alleged that all Courier Express Defendants (as well as Defendant IDEXX) shared control over her work and were sufficiently related that they are her employer under the NCWHA.  Dkt. 1, Compl., at ¶¶ 14, 21, 29.

## V.    Conclusion

As discussed above, Plaintiff has stated a claim for relief under the NCWHA for unpaid wages and illegal deductions from her wages, and Defendants' partial motion to dismiss should be denied in full.

Respectfully submitted this 21st day of May, 2018.

Respectfully submitted,

*/s/ Harold L. Lichten*
Harold Lichten, *pro hac vice*
Matthew Thomson, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
(617) 994-5801
hlichten@llrlaw.com
mthomson@llrlaw.com

Gilda A. Hernandez, *pro hac vice*
THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC
1020 Southhill Dr., Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com

Jeffrey B. Sand
Ga. Bar No. 181568
THE WEINER LAW FIRM LLC
3525 Piedmont Road
7 Piedmont Center, 3rd Floor
Atlanta, Georgia 30305
Tel: (404) 205-5029
Fax: (866) 800-1482
js@atlantaemployeelawyer.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2018, the foregoing was served in accordance with the Federal Rules of Civil Procedure on the following:

David F. Root (Ga. Bar No. 614125)
Abby C. Grozine (Ga. Bar No. 542723)
**CARLOCK COPELAND & STAIR, LLP**
191 Peachtree St., NE
Suite 3600
Atlanta, GA 30303
T: 404-522-8220
F: 404-523-2345
agrozine@carlockcopeland.com
droot@carlockcopeland.com

Rebecca Trenner, *pro hac vice anticipated*
Emily A. Quillen, *pro hac vice*
**SCOPELITIS GARVIN LIGHT HANSON & FEARY, P.C.**
10 West Market St.
Suite 1400
Indianapolis, IN 46204
T: 317-637-1777
F: 317-687-2414
rtrenner@scopelitis.com
equillen@scopelitis.com

Andrew J. Butcher, *pro hac vice*
**SCOPELITIS GARVIN LIGHT HANSON & FEARY, P.C.**
30 West Monroe St.
Chicago, IL 60603
Suite 600
T: 312-255-7200
F: 312-422-1224
abutcher@scopelitis.com

*Attorneys for Defendants Courier Express/Charlotte,*
*Inc., Courier Express/Raleigh, Inc., Courier Express*

*Freight, Inc., and Courier Express US, Inc.*

Lisa A. Schreter (Ga. Bar No. 629852)
**LITTLER MENDELSON, PC**
3344 Peachtree Road, NE
Suite 1500
Atlanta, GA 30326
T: 404-233-0330
F: 404-233-2361
lschreter@littler.com

*Attorney for Defendant IDEXX Pharmaceuticals, LLC*

*/s/ Harold L. Lichten*
Harold Lichten, *pro hac vice*
Matthew Thomson, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
(617) 994-5801
hlichten@llrlaw.com
mthomson@llrlaw.com

Gilda A. Hernandez, *pro hac vice*
THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC
1020 Southhill Dr., Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com

Jeffrey B. Sand
Ga. Bar No. 181568
THE WEINER LAW FIRM LLC
3525 Piedmont Road
7 Piedmont Center, 3rd Floor

28

Atlanta, Georgia 30305
Tel: (404) 205-5029
Fax: (866) 800-1482
js@atlantaemployeelawyer.com

*Attorneys for Plaintiff*