IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| TRISH KINCAID, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:18-cv-00707-AT |
| COURIER EXPRESS/CHARLOTTE, INC., COURIER EXPRESS/RALEIGH, INC., COURIER EXPRESS FREIGHT, INC., COURIER EXPRESS US, INC., and IDEXX PHARMACEUTICALS, LLC, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS; APPOINTMENT OF PLAINTIFF'S COUNSEL AS CLASS COUNSEL; APPROVAL OF SETTLEMENT ADMINISTRATOR; AND APPROVAL OF PLAINTIFF'S NOTICE OF SETTLEMENT**

## **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................1

II.     FACTUAL & PROCEDURAL HISTORY.........................................1

    A.      The Nature of Plaintiff's Claims .............................................1

    B.      Procedural History....................................................................2

    C.      Settlement Negotiations ...........................................................3

III.    SUMMARY OF SETTLEMENT TERMS ........................................5

    A.      Monetary Awards ......................................................................5

    B.      Notice Provisions ......................................................................9

    C.      Attorney's Fees & Litigation Costs.......................................10

IV.     CLASS CERTIFICATION.................................................................12

    A.      Provisional Certification of the Rule 23 Class for Settlement is Appropriate............................................................................13

        1.      Numerosity.....................................................................14

        2.      Commonality..................................................................14

        3.      Typicality.......................................................................16

        4.      Adequacy .......................................................................17

        5.      Predominance and Superiority.....................................19

    B.      Plaintiff's Counsel Should Be Appointed as Class Counsel..............21

V.      PRELIMINARY APPROVAL .........................................................22

    A.      Preliminary Approval of the Settlement is Procedurally Fair.............26

    B.      Preliminary Approval of the Settlement is Warranted Because the Settlement is Fair, Reasonable and Adequate. ...............................27

        1.      Likelihood of Success at Trial .....................................28

2.     Range of Reasonable Recovery and the Point on or below the Range of Possible Recovery at which a Settlement is Fair, Adequate and Reasonable. ........................................................ 29

3.     Complexity, Expense, and Duration of Litigation .................... 32

4.     Stage of the Proceedings ............................................................ 33

V.     ATTORNEY'S FEES, COSTS AND EXPENSES, AND SERVICE AWARDS ............................................................................................. 34

VI.     THE PROPOSED FLSA SETTLEMENT IS FAIR AND REASONABLE ...................................................................................... 34

VII.     CONCLUSION ............................................................................. 37

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*
   521 U.S. 591 (1997)............................................................................20

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*
   211 F.R.D. 457 (S.D. Fla. 2002)........................................................23

*Atkinson v. Wal-Mart Stores, Inc.*
   2011 WL 6846747 (M.D. Fla. Dec. 29, 2011) ....................................11

*Bennett v. Behring Corp.*
   737 F.2d 982 (11th Cir. 1984) ..................................................... 23, 27

*Berber v. Hutchison Tree Serv.*
   No. 5:15-CV-143-D, 2018 WL 3869980 (E.D.N.C. Aug. 14, 2018)..................18

*Botero v. Commonwealth Limousine Serv. Inc.*
   2013 WL 3929785 (D. Mass. July 25, 2013) ......................................36

*Brooklyn Sav. Bank v. O'Neil*
   324 U.S. 697 (1945)............................................................................34

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*
   2008 WL 11336122 (N.D. Ga. Oct. 20, 2008) ....................................26

*Carrillo v. Schneider Logistics Transloading and Distribution, Inc.*
   2015 WL 12698305 (C.D. Ca. 2015) ....................................................8

*Chambers v. RDI Logistics, Inc.*
   65 N.E.3d 1 (Mass. 2016) ...................................................................18

*Clayton v. Knight Transp.*
   2013 WL 5877213 (E.D. Cal. Oct. 30, 2013)......................................31

*Clincy v. Galardi S. Enterprises, Inc.*
   808 F. Supp. 2d 1326 (N.D. Ga. 2011)................................................36

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*
   258 F.R.D. 545 (N.D. Ga. 2007)....................................... 28, 29, 30, 32

*Costello v. BeavEx, Inc.*
    810 F.3d 1045 (7th Cir. 2016) ...................................................................... 18, 19

*Cotton v. Hinton*
    559 F.2d 1326 (5th Cir.1977) .................................................................33

*De La Riva v. Houlihan Smith & Co., Inc.*
    2014 WL 7053772 (N.D. Ill. Dec. 12, 2014)......................................................31

*DeGraff v. SMA Behavioral Health Servs., Inc.*
    945 F. Supp. 2d 1324 (M.D. Fla. 2013)................................................30

*Encarnacion v. J.W. Lee, Inc.*
    2015 WL 6437686 (S.D. Fla. Oct. 22, 2015) ........................................................8

*Equal Rights Ctr. v. Wash. Metro. Area Transit Auth.*
    573 F. Supp. 2d 205 (D.D.C. 2008).....................................................32

*Fabricant v. Sears Roebuck*
    202 F.R.D. 310 (S.D.Fla.2001)..................................................... 15, 17

*Frank v. Eastman Kodak*
    228 F.R.D. 174 (W.D.N.Y. 2005).........................................................25

*Freund v. Hi–Tech Satellite, Inc.*
    185 Fed. Appx. 782 (11th Cir. 2006).................................................36

*Garcia v. E.J. Amusements of New Hampshire, Inc.*
    98 F. Supp. 3d 277 (D. Mass. 2015)....................................................16

*Garcia–Rubiera v. Calderon*
    570 F.3d 443 (1st Cir.2009).........................................................16

*Glass v. UBS Fin. Serv., Inc.*
    2007 WL 2216862 (N.D. Cal. Jan. 26, 2007).......................................................31

*In re AOL Time Warner ERISA Litig.*
    2006 WL 2789862 (S.D.N.Y. Sept 27, 2006) ........................................................26

*In re Austrian*
    80 F. Supp. 2d ...................................................................................33

*In re Currency Conversion Fee Antitrust Litig.*
   No. 01 MDL 1409, 2006 WL 3247396 (S.D.N.Y. Nov.8, 2006)........................31

*In re Harnischfeger Indus., Inc.*
   212 F.R.D. 400 (E.D. Wis. 2002) ...........................................................26

*In re Ira Haupt & Co.*
   304 F. Supp. 917 (S.D.N.Y. 1969) ...........................................................28

*In re Mego Fin. Corp. Sec. Litig.*
   213 F.3d 454 (9th Cir.2000) ..................................................................31

*In re PaineWebber Ltd. P'ships Litig.*
   171 F.R.D. 104 (S.D.N.Y. 1997) ...........................................................28

*In re Relafen Antitrust Litig.*
   231 F.R.D. ................................................................................. 15, 20

*In re Traffic Executive Ass'n*
   627 F.2d ..........................................................................................25

*In re U.S. Oil and Gas Litig.*
   967 F.2d 489 (11th Cir. 1992) ...............................................................23

*In re Vitamins Antitrust Litig.*
   305 F. Supp. 2d 100 (D.D.C. 2004).........................................................33

*In re Warfarin Sodium Antitrust Litig.*
   391 F.3d 516 (3d Cir. 2004) ........................................................... 23, 33

*Johnson v. Brennan*
   2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ......................................32

*Kampfer v Fifth Third Bank, et al.*
   No. 3:14-cv-02849 (N.D. Ohio 2017) ....................................................9

*Kilgo v. Bowman Trans.*
   789 F.2d 859 (11th Cir. 1986) ...............................................................14

*Kornberg v. Carnival Cruise Lines, Inc.*
   741 F.2d 1332 (11th Cir.1984) ..............................................................16

*Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor*
   679 F.2d 1350 (11th Cir. 1982) ............................................................35

*Mashburn v. Nat'l Healthcare, Inc.*
   684 F.Supp. 660 (M.D.Ala.1988) ..........................................................33

*McLaurin v. Prestage Foods, Inc.*
   2012 WL 12910993 (E.D.N.C. Feb. 3, 2012).......................................17

*McMahon v. Olivier Cheng Catering & Events, LLC*
   2010 WL 2399328 (S.D.N.Y. 2010).......................................................25

*Morefield v. NoteWorld, LLC*
   2012 WL 1355573 (S.D. Ga. Apr. 18, 2012) .......................................11

*Moreyra v. Fresenius Med. Care Holdings, Inc.*
   2013 WL 12248139 (C.D. Cal. Aug. 7, 2013) .....................................31

*Murray v. Auslander*
   244 F.3d 807 (11th Cir.2001) ...............................................................16

*Norris v. Lake Conway Landscaping of Orlando, Inc.*
   2015 WL 3632314 (M.D. Fla. June 10, 2015).......................................30

*Pierre-Val v. Buccaneers Ltd. P'ship*
   2015 WL 12843848 (M.D. Fla. Dec. 7, 2015) .......................................8

*Reed v. Friendly's Ice Cream, LLC*
   No. 1:15-cv-00298 (M.D. Pa. 2016).........................................................8

*Rehberg v. Flowers Baking Co. of Jamestown, LLC*
   2015 WL 1346125 (W.D.N.C. Mar. 24, 2015).......................................20

*Reyes v. AT&T Mobility Servs., LLC*
   2013 WL 12219252 (S.D. Fla. June 21, 2013).......................................8

*Rindfleisch v. Gentiva Health Servs., Inc.*
   962 F. Supp. 2d 1310 (N.D. Ga. 2013).................................................17

*Ripley v. Sunoco, Inc.*
   287 F.R.D. 300 (E.D. Pa. 2012)............................................................15

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*
  601 F.3d 1159 (11th Cir. 2010) .............................................................19

*Scantland v. Jeffry Knight, Inc.*
  721 F.3d 1308 (11th Cir.2013) .............................................................18

*Schwann v. FedEx Ground Package Sys., Inc.*
  813 F.3d 429 (1st Cir. 2016)................................................................18

*Seghroughni v. Advantus Rest., Inc.*
  2015 WL 2255278 (M.D. Fla. May 13, 2015).....................................11

*Smith v. Wm. Wrigley Jr. Co.*
  2010 WL 2401149 (S.D. Fla. June 15, 2010)............................... 26, 27

*Somers v. Converged Access, Inc.*
  911 N.E.2d 739 (Mass.2009) ...............................................................18

*Tobar v. Khan*
  2011 WL 564588 (M.D. Fla. Feb. 1, 2011)........................................30

*Tomkins v. Amedisys, Inc.*
  2014 WL 129407 (D. Conn. Jan. 13, 2014).........................................17

*Velasquez-Monterrosa v. Mi Casita Restaurants*
  2016 WL 1703351 (E.D.N.C. Apr. 27, 2016) .....................................17

*Velez v. Majik Cleaning Serv., Inc.*
  2007 WL 7232783 (S.D.N.Y. June 25, 2007) .....................................28

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*
  396 F.3d 96 (2d Cir. 2005) ..................................................................23

*Waters v. Int'l Precious Metals Corp.*
  190 F.3d 1291 (11th Cir.1999) .............................................................11

*Williams v. Mohawk Industries, Inc.*
  568 F.3d 1350 (11th Cir.2009) .............................................................15

*Wolff v. Cash 4 Titles*
  2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) .....................................12

*Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*
  2015 WL 5703569 (E.D.N.C. Sept. 28, 2015) ......................................................18

**Statutes**

29 U.S.C. § 201 ......................................................................................................2, 10

29 U.S.C. § 213 ...........................................................................................................36

29 U.S.C. § 216 .............................................................................................. 1, 34, 35, 37

29 U.S.C. § 255 ...........................................................................................................36

29 U.S.C. § 260 ...........................................................................................................37

N.C. Gen. Stat. § 95-25.1 .......................................................................................2, 10

**Other Authorities**

4 Newberg on Class Actions § 11.26 .........................................................................26

Manual for Complex Litigation (Fourth) § 13.14 & § 21.632 (2004) .....................24

Manual for Complex Litigation (Third) § 30.41 (1995) .................................... 24, 25

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. passim

## I.     INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216, the undersigned Counsel—on behalf of the Plaintiff and the Proposed Settlement Class—submit this Memorandum in Support of Plaintiff's Unopposed Motion for Provisional Certification of the Settlement Class, Appointment of Plaintiff's Counsel, Preliminary Approval of Class and Collective Action Settlement, Approval of Settlement Administrator, and Approval of Plaintiff's Notice of Settlement. The terms of the settlement are set forth in the Settlement Agreement attached as Exhibit A hereto and described in detail in Section II, *infra*. The settlement is the result of protracted, complicated and arm's length settlement negotiations. It is both procedurally and substantively fair and in the best interests of the Rule 23 Class and the FLSA Class; therefore, this Court should grant Plaintiff's Motions.[1]

## II.     FACTUAL & PROCEDURAL HISTORY

### A.     <u>The Nature of Plaintiff's Claims</u>

Plaintiff asserts that she and similarly situated individuals are former or current couriers that perform pick-up and delivery services for Courier Express

---

[1] For simplicity's sake, this Memorandum will refer to the Plaintiff's proposed  class certification based on her class claims under the NCWHA as "the putative Rule 23 Class" and proposed collective action certification under the FLSA as "the putative FLSA Class."

Charlotte, Inc., Courier Express/Raleigh, Inc., Courier Express Freight, Inc., and/or Courier Express US, Inc. ("Courier Express Defendants"), which contract with other companies desirous of these services, such as Defendant IDEXX Pharmaceuticals, LLC ("IDEXX").  Plaintiff asserts that the Courier Express Defendants then assign specific pick-ups and deliveries to couriers such as Plaintiff on a daily basis.[2]

### B.    Procedural History

On February 16, 2018, Plaintiff Trish Kincaid filed this action on behalf of herself and other similarly situated couriers who she asserts worked for Courier Express Defendants and IDEXX, seeking to recover unpaid overtime and minimum wages under the FLSA and unpaid wages under the North Carolina wage laws. Specifically, Plaintiff asserts that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq*, by: (1) misclassifying Plaintiff and putative class and collective members as independent contractors; (2) failing to lawfully compensate Plaintiff and putative class and collective members for all hours worked; (3) failing to pay Plaintiff and putative class and collective members all

---

[2] Consistent with the Settlement Agreement, Defendants do not oppose this motion. Plaintiff acknowledges, however, that Defendants' non-opposition does not necessarily equate to assent to Plaintiff's characterization of the facts herein or the legal arguments Plaintiff makes below in support of the motion.

owed and/or earned wages; and (4) subjecting Plaintiff and putative class and collective members to unlawful deductions and/or withholdings.  *See* Dkt. 1.

On May 7, 2018, the Courier Express Defendants filed a partial motion to dismiss, and Defendant IDEXX filed a partial motion to dismiss on separate grounds. Dkts. 52, 53.  Plaintiff opposed these motions and Defendants filed separate reply briefs.  *See* Dkts. 57, 58, 62, 63.  On May 11, 2018, Plaintiff also moved for conditional certification of an FLSA collective action comprised of claims of similarly situated individuals, which Defendants intended to oppose had this matter not been resolved at mediation.  *See* Dkt. 54.

C.    **Settlement Negotiations**

In June 2018, Courier Express Defendants contacted Plaintiff's counsel and expressed interest in engaging in formal non-binding mediation.  Defendants and Plaintiff negotiated a detailed mediation agreement governing the mediation and providing some parameters for the ultimate settlement agreement.  On June 13, 2018, the Parties jointly moved to stay proceedings in order to pursue mediation; the Court granted this motion.  Dkts. 67, 68.  The Parties signed the agreement to mediate on June 20, 2018, the terms of which also required the Courier Express Defendants to disclose the time and payroll data for Plaintiff and all members of the putative FLSA Class and/or the putative Rule 23 Class, to permit Plaintiff to conduct a data analysis and calculate possible damages.

Prior to attending mediation, the Courier Express Defendants shared detailed data regarding the compensation and delivery activities of approximately 1,500 members of the putative Rule 23 Class and the putative FLSA Class.  This data included detailed entries for the daily activities of each putative class member, from which Plaintiff's counsel believes it was able to make an informed estimate of the hours worked each week and, in turn, the alleged overtime hours worked and the potential overtime damages if Plaintiff and the FLSA collective were successful on their FLSA overtime claims.  Plaintiff also received detailed compensation data showing the weekly pay of each putative class member as well as the wage deductions that Plaintiff asserted were unlawful in violation of the NCWHA.  Over the next four weeks, Plaintiff's retained expert and paralegals reviewed and utilized millions of data points to develop Plaintiff's calculations of alleged damages, which were then used in settlement discussions both prior to and during mediation.

Defendants and Plaintiff subsequently retained Hunter Hughes, an attorney with extensive experience mediating complex wage and hour actions, as a neutral third-party mediator to assist them in their attempt to reach a settlement.  As a direct result of the negotiations mediated by Mr. Hughes on August 8, 2018, Defendants and Plaintiff reached an agreement in principle.   After further negotiation,

Defendants and Plaintiff reached the Settlement Agreement described below on December 19, 2018.[3]

## III.   SUMMARY OF SETTLEMENT TERMS

### A.   <u>Monetary Awards</u>

The Settlement Agreement creates a non-reversionary, "all in" settlement fund consisting of a Maximum Gross Settlement Amount of $1,600,000.00 (the "Settlement Fund") which covers all awards to "Participating Rule 23 Settlement Class Members and Participating FLSA Collective Members" (as defined in the Settlement Agreement), service awards to Plaintiff and the three current opt-in plaintiffs, Matthew Kincaid, Brittnie Williams, and Scott Shelton ("Early Opt-ins"), attorneys' fees, settlement administration fees, and litigation costs, including the fees of the mediator which have been prepaid by Plaintiff's counsel and will be deducted from the Settlement Fund.  Dkt. 76-3 § IV.  This Gross Settlement Amount of $1,600,000.00 represents the maximum gross amount that Defendants, collectively, will pay pursuant to the Settlement Agreement in the event each of the approximately 1,500 members of the putative class and collective timely elects to participate in the settlement and receives a settlement payment.  In return, the Settlement Agreement

---

[3] The Parties acknowledge that in settling this action, nothing in their Settlement Agreement or any documents prepared in connection with the settlement is an admission by Defendants of liability, wrongdoing, or the propriety of collective or class treatment in this Action.

provides for the dismissal with prejudice of this action, as well as a release of state and/or local law wage and hour claims of the putative Rule 23 class, as well as the FLSA claims of those in the putative FLSA collective who choose to participate in the proposed settlement.

The Settlement Agreement defines the classes of persons to who are eligible to participate in the putative FLSA Class under this settlement as all:

> individual[s] who entered into an agreement with Courier Express/Charlotte, Inc. or Courier Express/Raleigh, Inc., to provide courier services and performed courier services, pursuant to that agreement, as an independent contractor at any time between February 16, 2015 and the date [the Settlement] Agreement [was] fully executed by all Parties.

All members of that putative collective will be invited to submit a claim form to obtain a share of the settlement, and those who submit a form to participate will release their claims under the FLSA.  Moreover, the Settlement Agreement defines a putative Rule 23 class defined as all:

> individual[s] who entered into an agreement with Courier Express/Charlotte, Inc. or Courier Express/Raleigh, Inc., to provide courier services and performed courier services, pursuant to that agreement, as an independent contractor at any time between February

16, 2016 and the date [the Settlement] Agreement [was] fully executed

by all Parties.

This proposed Rule 23 Settlement Class, which is a subset of the larger proposed FLSA Settlement Class, recognizes the shorter two-year statute of limitations applicable to the state law wage claims asserted pursuant to Rule 23. The actual amount that each Participating Rule 23 Settlement Class Member and Participating FLSA Collective Member will receive will be determined pursuant to an allocation formula that reflects the relative value of their claims under Plaintiff's theory of the case, taking into account the time and compensation records that have been produced as well as the number of weeks each Participating Rule 23 Settlement Class Member and Participating FLSA Collective Member provided independent contractor services to the Courier Express Defendants. *See* Dkt. 76-3 Art. IV § 2.

The Settlement Agreement provides that Plaintiff receive a service award of $15,000.00 and the Early Opt-ins each receive a service award of $10,000.00, in recognition of the time and commitment that they dedicated to bringing this action forward to advance the rights of absent class members. The service awards are also consideration for execution by Plaintiff and the Early Opt-ins, respectively, of a general release of all claims against Defendants. As discussed in Plaintiff's motion for attorney's fees and service awards, Plaintiff's counsel believes these amounts are fair and reasonable and consistent with other settlements in this area of law. *See,*

*e.g., Pierre-Val v. Buccaneers Ltd. P'ship*, No. 814CV01182CEHEAJ, 2015 WL 12843848, at \*4 (M.D. Fla. Dec. 7, 2015); *Reyes v. AT&T Mobility Servs., LLC*, No. 10-20837-CV, 2013 WL 12219252, at \*3 (S.D. Fla. June 21, 2013); *Encarnacion v. J.W. Lee, Inc.*, No. 14-CIV-61927, 2015 WL 6437686, at \*5 (S.D. Fla. Oct. 22, 2015).

The settlement will be administered by a neutral-third party settlement administrator.   This motion requests that the Court appoint RG2 Claims Administration, LLC ("RG2"), an entity specializing in administration of class action and wage settlements, as the settlement administrator for this action.  The cost of administration is estimated to be $20,000.00, which will be paid out of the $1,600,000.00 Settlement Fund.   Courts routinely approve RG2 as a settlement administrator in cases such as this.  *See, e.g., Carrillo v. Schneider Logistics Transloading and Distribution, Inc.*, No. CV118557CASDTBX, 2015 WL 12698305, at \*6 (C.D. Ca. 2015) ($21 million FLSA settlement involving Wal-Mart and both opt-in and opt-out class members pursuant to the FLSA and Rule 23 of the Federal Rules of Civil Procedure); *Reed v. Friendly's Ice Cream, LLC*, No. 1:15-cv-00298, Dkts. 94-3, 98 (M.D. Pa. 2016) ($3.5 million FLSA settlement involving both opt-in and opt-out class members pursuant to the FLSA and Rule 23 of the Federal Rules of Civil Procedure); *Kampfer v Fifth Third Bank, et al.*, No. 3:14-cv-02849,

Dkts. 92-1, 93 (N.D. Ohio 2017) ($1.1 million FLSA settlement reached by Fifth Third Bank involving over 200 class members).

## B.   <u>Notice Provisions</u>

The Settlement Agreement provides that following Court approval, the neutral, third-party settlement administrator shall notify putative class members and plaintiffs of the claims in this action.  *See* Dkt. 76-3 Art. V.  The settlement administrator will update addresses using the United States Post Office's National Change of Address database prior to mailing the notice to make sure that it has determined the proper address for all putative class members.  *See* Dkt. 76-3 Art. V § 5.  The settlement administrator will then issue the Proposed Notice by U.S. mail, attached hereto as Exhibit A, to all putative members of the Settlement Classes.  The notice packets should minimize any risk of confusion. The concurrently filed proposed Order includes a comprehensive list of the assignments for the settlement administrator.[4]

---

[4] In order to ensure that all members of the putative FLSA Class and the putative Rule 23 Class are informed of the settlement and how it may affect their rights, the settlement administrator will notify them of the settlement using U.S. mail and text message and, where such mailings are returned as undeliverable, will conduct a skip trace to identify a better address.  Where such efforts do not result in a deliverable address, the Courier Express Defendants will search for, and if available provide, the e-mail address on record for the individual, which the administrator will then use to e-mail the notice materials.  All individuals who receive the Proposed Notice will be informed that they have a right to submit a claim form to participate in the settlement and receive funds, that they may object to the settlement, or that they may exclude themselves from the settlement.

## C.      Attorney's Fees & Litigation Costs

---

All members of the putative Rule 23 Class who do not opt-out will be bound by a release of the following claims: any and all wage and hour claims and causes of action, whether known or unknown, at law or in equity, whether arising under common law or federal, state, and/or local law, statute, ordinance, regulation, or any other source of law, including the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, *et seq.* (the "North Carolina Wage Act"), ***but not including the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.****,* which Putative Rule 23 Settlement Class Members and Putative FLSA Collective Members asserted in the Action, or could have asserted in the Action, against the Defendant Releasees, including, but not limited to, claims arising out of, derived from, or related to the facts and circumstances alleged in the Complaint, and including all wage and hour related claims, demands, rights, liabilities, and/or causes of action of any nature and description whatsoever for wages, bonuses, commissions, overtime, vacation pay, severance pay, and any related damages, costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or any other relief related to any alleged failure to pay all wages or other compensation owed, or properly record or credit hours worked.  In addition, any member of the putative FLSA Class who participates in the settlement and receives funds will also release his or her FLSA claims.  In no event shall any settlement funds revert to the Defendants.  After accounting for attorney's fees and service awards and settlement administration costs, the remaining funds of approximately $987,584.38 (defined as the "Net Settlement Amount" in the proposed Settlement Agreement) will be distributed to putative class members who submit a claim form based on a formula to be determined by Class Counsel and reviewed and approved by Defendants.  All funds distributed to participating settlement class members will be reported as non-wage income on an IRS Form 1099.  Thirty percent (30%) of each settlement share shall be attributable to the release of the participating settlement class members' FLSA claims, and the remaining seventy percent (70%) of each settlement share shall represent consideration for the release of state law wage claims.  All checks sent to participating settlement class members must be cashed within 180 days, and any funds resulting from uncashed checks will be distributed to the proposed *cy pres* beneficiaries, the UNC Highway Safety Research Center and the Georgia Motor Trucking Foundation, Inc., *d/b/a* Georgia Highway Safety Foundation.

The Settlement Agreement provides that Defendants shall not oppose any petition for attorneys' fees filed by Plaintiff's counsel up to one-third, *i.e.*, ($533,333.33) of the Gross Settlement Amount, plus reimbursement of reasonable litigation costs and expenses in the amount of $13,972.29.[5]  *See* Dkt. 76-3 Art. IV 4. Numerous courts in the Eleventh Circuit have approved fee awards in that amount. *See, e.g.*, *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1291 (11th Cir.1999) (awarding 33 1/3% of a settlement of $40 million); *Morefield v. NoteWorld, LLC*, No. 1:10-CV-00117, 2012 WL 1355573, at *5–6 (S.D. Ga. Apr. 18, 2012) (awarding 33 1/3% of a settlement of $1 million); *Atkinson v. Wal-Mart Stores, Inc.*, No. 8:08-CV-691-T-30TBM, 2011 WL 6846747, at *7 (M.D. Fla. Dec. 29, 2011) (awarding 33 1/3% of a settlement of $2 million); *Seghroughni v. Advantus Rest., Inc.*, No. 8:12-CV-2000-T-23TBM, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) (finding that an attorney's fee of one-third of the settlement fund "is fair and reasonable in light of the results obtained by the [l]ead [c]ounsel, the risks associated with this action, the [l]ead [c]ounsel's ability and experience in class action litigation, and fee awards in comparable cases"); *Wolff v. Cash 4 Titles*, No.

---

[5] Defendants have agreed, for settlement purposes only, not to oppose Plaintiff's counsel's petition for attorneys' fees, costs and expenses in connection with this settlement.  Again, however, Defendants' non-opposition to the instant motion, or to Plaintiff's separate motions for approval of requested attorneys' fees, costs and expenses, should not be read, however, as an endorsement of, or agreement with, the reasonableness of any such fees sought or the rationale or basis through which they are sought.

03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012), *report and recommendation adopted,* No. 03-22778-CIV, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012) (collecting cases and observing that "[t]he average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third."). A separate motion for attorney's fees and costs is filed contemporaneously addressing fees and costs in greater detail.

## IV.   CLASS CERTIFICATION

Plaintiff also asks the Court to provisionally certify the proposed Rule 23 Class and the proposed FLSA Class in this action solely for purposes of the proposed settlement, and to appoint the undersigned as class counsel for the purpose of settlement.[6] As explained below, Plaintiff contends the proposed Rule 23 Class and

---

[6] Plaintiff acknowledges that pursuant to the terms of the Parties' Settlement Agreement, "[i]f a court of competent jurisdiction does not finally approve such settlement for the Settlement Class, this Agreement shall have no effect and the Parties shall revert to their original positions, and nothing in this Agreement or any other document prepared in connection with the Settlement shall be used as an admission of wrongdoing, or concession of fact or law, in this or any other legal proceeding." Indeed, Defendants have agreed not to oppose this motion for settlement purposes only. Thus, while Plaintiff argues herein that the putative North Carolina state law class they seek to represent in this lawsuit fulfills Federal Rule of Civil Procedure 23's requirements for class treatment, and while Defendants have agreed not to oppose those arguments or Plaintiff's requests that the Court provisionally certify these classes for purposes of the proposed settlement, Plaintiff expressly acknowledges that Defendants vigorously oppose the merits of Plaintiff's FLSA and North Carolina state law claims and do not concede the propriety of class or collective action treatment of any putative Rule 23 Class or putative FLSA Class if this case were to proceed in litigation, and Defendants specifically reserve the

Plaintiff's counsel meet all the requirements of Rule 23 and, thus, that this Motion should be granted.

## A. Provisional Certification of the Rule 23 Class for Settlement is Appropriate.

A proposed Rule 23 Class qualifies for certification where a proposed class satisfies all of the prongs of Rule 23(a) and one of the prongs of Rule 23(b). Rule 23(a) requires that:

(1) the class is so numerous that joinder of all members impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). Additionally, Rule 23(b)(3) requires the court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other

---

right to raise any argument with respect to the merits of the claims asserted in this action, or the appropriateness of the certification of any FLSA Class or Rule 23 Class that they might have otherwise undertaken in litigation, or to make arguments that are contrary to the positions taken by the Plaintiff in this memorandum, if the parties' proposed settlement is not given final approval by the Court.

available methods for fairly and efficiently adjudicating the controversy." *Id*. at 23(b)(3).   In order to proceed with the notice process, Plaintiff respectfully requests that this Court provisionally certify the following Rule 23 Class defined as follows:

> All individuals who entered into an agreement with Courier Express/Charlotte, Inc. or Courier Express/Raleigh, Inc., to provide courier services and performed courier services, pursuant to that agreement, as an independent contractor at any time between February 16, 2016, and December 19, 2018.

*See* Dkt. 76-3 Art. I § 29.   In order to obtain final approval of the class action settlement on behalf of this group, the Court must ensure that the prerequisites of Rule 23 are satisfied.   Plaintiff believes this class satisfies all of the prerequisites for certification under Rule 23(a) and (b)(3).

### 1.   Numerosity

The putative Rule 23 Class includes approximately 1,500 individuals.   Thus, the Rule 23(a)(1) numerosity requirement is met.   *See Kilgo v. Bowman Trans.,* 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

### 2.   Commonality

A class also must share common questions of law or fact.   FED. R. CIV. P. 23(a)(2). The commonality prerequisite "is not a difficult one to meet." *In re Relafen*

14

*Antitrust Litig.*, 231 F.R.D. at 69. "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Industries, Inc.,* 568 F.3d 1350, 1355 (11th Cir.2009) (internal quotation marks omitted); *see also Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 313 (S.D.Fla.2001) (same). Here, the commonality requirement is satisfied because there are multiple questions of law and fact that center on the Courier Express Defendants' classification of all couriers as independent contractors and the manner in which they were compensated. Did the Courier Express Defendants misclassify couriers as independent contractors? If so, did the Courier Express Defendants violate the FLSA and state wage and hour laws? If the answers are yes, Plaintiff contends that the members of the putative Rule 23 Class and putative FLSA Class would be entitled to back payment in the amount of unpaid overtime and illegally withheld deductions. If the answers are no, they would be entitled to nothing. But, either way, their claims would rise or fall together. Accordingly, Plaintiff believes the Rule 23(a)'s commonality requirement is satisfied. *See, e.g., Ripley v. Sunoco, Inc.,* 287 F.R.D. 300, 308 (E.D. Pa. 2012) (finding that the class maintained a common claim that the employer broadly enforced an unlawful policy denying employees earned overtime compensation and that the policy was "the common answer that potentially drives the resolution of [the] litigation," though "each Plaintiff's recovery might be different due to the

number of hours that he or she worked without proper compensation").

### 3.   Typicality

To meet the requirement of typicality, a class representative's claims must "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and [be] based on the same legal theory." *Garcia–Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir.2009) (internal quotation marks omitted).   Plaintiff's claims are typical of the putative Rule 23 Class because they concern the same alleged policies and practices, *i.e.*, alleged misclassification of couriers as independent contractors, and they seek the same types of damages, including recovery of unlawful wage deductions in violation of NCWHA.   Rule 23(a)(3) is therefore satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander,* 244 F.3d 807, 811(11th Cir.2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"); *Garcia v. E.J. Amusements of New Hampshire, Inc.*, 98 F. Supp. 3d 277, 288 (D. Mass. 2015) (holding that plaintiff's "overtime claims are typical of the claims he intends to bring on behalf of the class" and certifying class under Rule 23).

### 4.   Adequacy

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *See Fabricant,* 202 F.R.D. at 314.  Rule 23(a)(4) is satisfied here because there are no conflicts of interest between Plaintiff and the proposed Participating Rule 23 Settlement Class Members and Participating FLSA Collective Members (as defined in the Settlement Agreement), and Plaintiff has retained competent counsel to represent them. Class Counsel here regularly engage in wage and hour class action litigation similar to the present case and have dedicated substantial resources to the prosecution of the action.   Specifically, The Law Offices of Gilda A. Hernandez, PLLC has successfully represented employees asserting wage claims in courts across the country and in this district.  *See, e.g., Rindfleisch v. Gentiva Health Servs., Inc.*, 962 F. Supp. 2d 1310 (N.D. Ga. 2013) (granting employees' motion for partial summary judgment in wage action); *Tomkins v. Amedisys, Inc.*, No. 3:12CV1082 WWE, 2014 WL 129407 (D. Conn. Jan. 13, 2014) (granting employees' motion for conditional certification of FLSA action); *Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448-BO, 2016 WL 1703351 (E.D.N.C. Apr. 27, 2016) (granting employees' motion for conditional and class certification in wage action); *McLaurin v. Prestage Foods, Inc.*, No. 7:09-CV-100-BR, 2012 WL 12910993, at *1 (E.D.N.C.

17

Feb. 3, 2012) (approving class and collective action settlement in wage action); *Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*, No. 5:13-CV-810-F, 2015 WL 5703569, at *1 (E.D.N.C. Sept. 28, 2015) (granting conditional and class certification in wage action); *Berber v. Hutchison Tree Serv.*, No. 5:15-CV-143-D, 2018 WL 3869980, at *2 (E.D.N.C. Aug. 14, 2018) (same).  Attorneys at Lichten & Liss-Riordan, P.C. also specialize in wage-and-hour class and collective actions and have successfully litigated wage claims on behalf of workers across the country, including many workers who perform courier and delivery work like Plaintiff and putative class members here. *See, e.g., Costello v. BeavEx, Inc.*, 810 F.3d 1045 (7th Cir. 2016) (affirming denial of defendant's motion for summary judgment and vacating District Court's denial of class certification); *Chambers v. RDI Logistics, Inc.*, 65 N.E.3d 1 (Mass. 2016) (successfully overturning a grant of summary judgment to defendants); *Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429 (1st Cir. 2016) (reversing grant of summary judgment for defendants); *Scantland v. Jeffry Knight, Inc.,* 721 F.3d 1308 (11th Cir.2013) (reversing grant of summary judgment to Defendants); *Somers v. Converged Access, Inc.,* 911 N.E.2d 739 (Mass.2009) (landmark decision of the Massachusetts Supreme Judicial Court on independent contractor misclassification).

### 5.    Predominance and Superiority

Rule 23(b)(3) is satisfied, as well, because the common legal and factual issues predominate over individualized issues, and resolution of the common issues for approximately 1,500 putative Rule 23 Class members in a single, coordinated proceeding is superior to many individual lawsuits addressing the same legal and factual issues.

With respect to predominance, Rule 23(b)(3) requires that "[c]ommon issues of fact and law ... ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). The predominance requirement is satisfied here because common questions present a significant aspect of the case and can be resolved for putative class members in a single adjudication.  In order to determine putative class members' alleged status as "employees" of Defendants, common issues would predominate over issues that are unique to individuals; for example, each putative Rule 23 Class member's relationship with Defendants is governed by the same or similar contract and the same legal theories. *See Sacred Heart Health Sys.,* 601 F.3d at 1171 ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.").  Courts have often granted class certification

of groups of workers pursuing wage claims based on misclassification as independent contractors. *See, e.g., Costello v. BeavEx, Inc.*, 810 F.3d 1045 (7th Cir. 2016); *Rehberg v. Flowers Baking Co. of Jamestown, LLC*, 2015 WL 1346125, at *1 (W.D.N.C. Mar. 24, 2015) (granting class certification to group of delivery drivers asserting North Carolina wage claims).

The requirement of superiority ensures that resolution by class action will achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results. *In re Relafen Antitrust Litig.*, 231 F.R.D. at 70. The requirement is also designed to ensure the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents to court at all." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

Here, Plaintiff believes the use of the class action mechanism conserves substantial time and judicial resources by resolving an issue in one case which would otherwise require hundreds of individual suits. Moreover, given the relatively small size of many of the claims asserted by members of the putative Rule 23 Class, it is likely that many of them would not be able—due to the expense of initiating and maintaining an individual action—or willing to seek recovery on their own.

Resolving these claims at once also removes the risk of inconsistent adjudications that might result from forcing each class member to litigate alone.

Also, the financial resources of the putative Rule 23 Class members weigh in favor of certifying the class, as the class members may not have the means to pursue individual actions to recover damages which, for a large number of class members, may be less than $1,000 even if they were successful at trial.

**B.** **Plaintiff's Counsel Should Be Appointed as Class Counsel.**

Rule 23(g) sets forth four criteria for the appointment of class counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law; and" (4) "the resources that counsel will commit to representing the class[.]" FED. R. CIV. P. 23(g)(1)(A). The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the class. *Id*. at 23(g)(1)(B). In this case, all of these factors suggest that the undersigned counsel should be provisionally appointed as Class Counsel for the purpose of settlement.

Plaintiff's counsel have labored tirelessly to identify, investigate, prosecute and resolve the claims of both the named representatives and all potential class members. Hernandez Dec. ¶¶ 12-17. Plaintiff's counsel have extensive experience in litigating claims under the FLSA and numerous other wage and hour, worker protection and civil rights statutes. Hernandez Dec. ¶¶ 5-8. Moreover, the counsel

assigned to this case are well-versed in class action, wage-and-hour, and other FLSA claims and are exceptionally well qualified to represent the class in this action. *See id.* Courts in this Circuit and elsewhere have repeatedly found counsel to be adequate class counsel. Hernandez Dec. ¶ 7. Accordingly, the Court should provisionally appoint the undersigned counsel as Class Counsel in this matter.

For all of the foregoing reasons, Plaintiff believes the putative Rule 23 Class and Plaintiff's counsel meet the requirements of Rule 23, and the Court should grant Plaintiffs' Motions for Provisional Class Certification and Appointment of Class Counsel and provisionally certify the proposed settlement classes defined above for the sole purpose of the Parties' proposed settlement of this action.[7]

## V.   PRELIMINARY APPROVAL

Finally, Plaintiff moves for preliminary approval of the settlement described above.  As this settlement is both procedurally and substantively fair and adequate, the Court should grant Plaintiff's Motion.

---

[7] Plaintiff requests provisional certification of these classes solely for purposes of the parties' proposed settlement. In the event the Court declines to grant preliminary approval to that settlement, as discussed *infra*, it should also deny Plaintiff's Motions for Provisional Class Certification and Appointment of Class Counsel. Moreover, to the extent the Parties' proposed settlement of this action does not receive final Court approval, any provisionally certified class should be decertified without prejudice to Plaintiff's ability to again seek class certification at a later time as part of this litigation.

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (citation and internal quotation marks omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex."). Under Rule 23(e) of the Federal Rules of Civil Procedure, a court may approve a proposed class action settlement if the court

determines that the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).

As described by the Manual for Complex Litigation, judicial approval of a proposed class settlement is a two-part process. Manual for Complex Litigation (Fourth) § 13.14, at 173 & § 21.632, at 320-21 (2004). First, "the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing." *Id*. If the court finds the settlement is sufficient, *i.e.*, is within the range of possible judicial approval, it will schedule a formal fairness hearing and direct notice to the class. *Id.* at § 21.633, at 321-22. Second, once notice has been disseminated to the class and the relevant evidence has been presented, the court makes the final determination as to whether the settlement is fair, reasonable, and adequate. *Id.* at § 21.634-635, at 322-23.

Plaintiff asks the Court to conduct the initial review of the settlement and find that it is within the range of fairness sufficient to justify a notice and fairness hearing. Preliminary approval of a settlement is not a decision about the merits of the settlement or the case itself. Rather, the Court's role is limited to determining whether the settlement agreement is sufficient to justify public notice and a hearing, at which time the class members and others may present arguments and evidence for or against the proposed agreement. Manual for Complex Litigation (Third) § 30.41, 236-37 (1995) (noting that that "[i]f the preliminary evaluation of the proposed

settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval, the court should permit notice of the settlement to be sent to class members. (internal marks omitted)).   Accordingly, in considering whether to grant preliminary approval, the Court is not required to probe extensively into the merits of the settlement or to make a final determination on the adequacy of the settlement.   Both of these inquiries are reserved for the final stage of the class settlement approval process. *Id*. Because preliminary approval is a provisional step that merely begins the settlement approval process, any doubts are resolved in favor of preliminary approval. *See In re Traffic Executive Ass'n*, 627 F.2d at 634 (preliminary approval "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness").   "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (citations omitted).   Plaintiff asserts that, because the settlement agreement reached in the instant case is both procedurally and substantively fair, the Court should grant Plaintiff's Motion.[8]

---

[8] Plaintiff submits that the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement, because a FLSA settlement does not implicate the same due process concerns. *See McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, *6 (S.D.N.Y. 2010).   Since Plaintiff seeks approval for

## A.   Preliminary Approval of the Settlement is Procedurally Fair.

"[A] strong presumption of fairness attaches to a settlement agreement when it is the result of [. . . ] arm's-length negotiation." *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 11336122, at *8 (N.D. Ga. Oct. 20, 2008), *quoting In re Harnischfeger Indus., Inc.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002).

The purpose of the first stage, "preliminary approval," is to determine whether the settlement is within the "range of reasonableness."  4 Newberg on Class Actions § 11.26.  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."  *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).  Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness.  *Carpenters Health & Welfare Fund*, 2008 WL 11336122, at *8 ("Courts often focus on whether the settlement resulted from "arms-length negotiations" between counsel possessed of "experience and ability ... necessary to effective representation of the class's interests."); *In re AOL Time Warner ERISA Litig.*, 2006 WL 2789862, at *5 (S.D.N.Y. Sept 27, 2006) ("In light

---

settlement on behalf of the putative FLSA Class and putative Rule 23 Class, this brief addresses the Rule 23 standard. If the Court agrees that standard is satisfied, then clearly the FLSA standard is satisfied as well.

of the substantial evidence that settlement negotiations were conducted at arms-length without any hint of collusion, the [c]ourt credits the [s]ettlement with a presumption of fairness.").   Here the settlement was reached via arm's-length negotiations, conducted in the presence of counsel and with the assistance of an experienced, neutral third-party mediator. There is no evidence whatsoever of any coercion or collusion or any other improper dealing that would lead to a finding that the negotiations were in any way unfair.   Moreover, as discussed below, the settlement reached is substantively fair to all parties concerned. There is thus no reason to think that preliminary approval should be denied on procedural fairness grounds.

**B.**   **Preliminary Approval of the Settlement is Warranted Because the Settlement is Fair, Reasonable and Adequate.**

When determining whether a settlement is ultimately fair, adequate and reasonable, courts in this circuit look to six factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986.  At the preliminary approval stage, courts have often engaged in a "preliminary evaluation" of these factors to

determine whether the settlement falls within the "range of reason" at the preliminary approval stage. *See*, *e.g.*, *Smith*, 2010 WL 2401149 at *2. Here, the balance of the *Bennett* factors weighs in favor of preliminary approval.

### 1.    Likelihood of Success at Trial

"The Court must first assess whether plaintiffs are likely to succeed at trial." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 559 (N.D. Ga. 2007). However, "[l]itigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).

Though Plaintiff's counsel is confident in their legal position, a trial on the merits would still involve significant risks. Plaintiff would have to overcome Defendants' opposition to conditional certification of any FLSA collective and, if conditionally certified, Defendants would almost certainly file a motion to decertify the FLSA Class. Moreover, Plaintiff would have to overcome Defendants' opposition to the certification of any Rule 23 state law class. Moreover, Plaintiff would still have to overcome the Courier Express Defendants' arguments that their system of payment complied with the FLSA and state law and that all couriers were

properly treated as independent contractors, as opposed to employees, as well as the Defendants' arguments that, in any event, they were not Plaintiff's (or the putative class members') joint employers as alleged.  Although Plaintiff believes she would survive a motion for decertification, achieve certification of the Rule 23 Class, and prevail on both liability and damages, Plaintiff and her counsel are also realistic. Even if Plaintiff prevails, this victory could only be obtained after extensive discovery, briefing, argument, and trial, all of which is of an uncertain duration, and the process of trial and appellate litigation is always full of uncertainty.  These considerations thus weigh very strongly in favor of preliminary approval.

> ### 2. Range of Reasonable Recovery and the Point on or below the Range of Possible Recovery at which a Settlement is Fair, Adequate and Reasonable.

"In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that plaintiffs could recover at trial and combine this with an analysis of plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries."  *See Columbus Drywall & Insulation, Inc.*, 258 F.R.D. 559.

In this action, Plaintiff's counsel performed a detailed damages analysis on the potential overtime claims of all members of the putative FLSA Class, as well as the state law wage deductions claims of all putative Rule 23 Class members.

Plaintiff's counsel calculated the potential class-wide wage deductions damages to be $1,540,000, and the potential collective-wide overtime damages to be $1,904,000. Thus, total single damages if every member of the putative FLSA Class had joined this action, and succeeded on his or her overtime claim, and if every putative Rule 23 Class member had recovered all potential wage deductions, would be $3,444,000 according to Plaintiff's damages methodology.[9]   The $1.6 million settlement constitutes 46% of this possible recovery ($1,600,000 / $3,444,000).

This is an excellent result and is within the range of settlement amounts that are often approved in wage-and-hour class actions. *See Columbus Drywall & Insulation, Inc.*, 258 F.R.D. at 559 (approving settlement even though the amount "does not represent a large fraction of the potential recovery at trial");   *Norris v. Lake Conway Landscaping of Orlando, Inc.*, No. 6:14-CV-1512-ORL-37, 2015 WL 3632314, at *2 (M.D. Fla. June 10, 2015) (holding that a compromise for 41.6% of the total damages initially claimed by plaintiff was reasonable due to "bona fide disputes" concerning FLSA provisions, such as the applicability of the § 213(b)(3) exemption); *DeGraff v. SMA Behavioral Health Servs., Inc.*, 945 F. Supp. 2d 1324, 1328 (M.D. Fla. 2013) (approving FLSA settlement of $5,000, plus $3,333.33 in

---

[9] As noted above, Defendants do not oppose this Motion for settlement purposes only.  However, Defendants' non-opposition should not be understood as agreement with, or acquiescence to, Plaintiff's view on the likelihood of success on her claims, her damages assessments identified in this Motion, or the damages methodology employed by Plaintiff, her counsel or their expert(s).

attorneys' fees, for a plaintiff who had estimated her damages at $88,000, due to bona fide disputes); *Tobar v. Khan*, No. 6:10-CV-239, 2011 WL 564588, at *2 (M.D. Fla. Feb. 1, 2011), *report and recommendation adopted,* No. 6:10-CV-239-ORL-22, 2011 WL 397898 (M.D. Fla. Feb. 2, 2011) (approving an FLSA settlement representing approximately one-fifth of the plaintiff's asserted damages); *Clayton v. Knight Transp.*, 2013 WL 5877213, at *5 (E.D. Cal. Oct. 30, 2013) (approving Rule 23 settlement where with "approximately fifty percent of the amount of unpaid overtime to which they would be entitled should they prevail at trial"); *Moreyra v. Fresenius Med. Care Holdings, Inc.*, 2013 WL 12248139, at *3 (C.D. Cal. Aug. 7, 2013) (Rule 23 settlement approval where gross settlement amount was "approximately 32 percent of the lost wages"); *Glass v. UBS Fin. Serv., Inc.,* 2007 WL 2216862, at *4 (N.D. Cal. Jan. 26, 2007) (approving settlement in wage class action for 25 to 35% of the claimed damages); *see generally In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir.2000) (finding a recovery of one-sixth, or approximately 17% of the potential recovery, to be fair under the circumstances); *In re Currency Conversion Fee Antitrust Litig.,* No. 01 MDL 1409, 2006 WL 3247396 at *6 (S.D.N.Y. Nov.8, 2006) (approving settlement of "roughly 10-15%" of the allegedly illegal fees collected from the class.).  This substantial recovery supports preliminary approval.

### 3.    Complexity, Expense, and Duration of Litigation

"Courts have recognized that class wage-and-hour cases [] are more complex and require greater skill to litigate." *De La Riva v. Houlihan Smith & Co., Inc.*, 2014 WL 7053772, at *2 (N.D. Ill. Dec. 12, 2014).  "Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)." *Johnson v. Brennan*, 2011 WL 4357376, at *17 (S.D.N.Y. Sept. 16, 2011).  In the absence of a proposed settlement, Defendants and Plaintiff likely would have engaged in lengthy discovery related to the class and collective issues in the case, and likely would have incurred the significant additional expense of litigation and retaining experts related to the calculation of potential damages. Given the likely duration and expense of the litigation, the settlement here is a positive result.  As one court has noted, "[p]laintiffs do not have any guarantee that they will receive a larger recovery from the [s]ettling [d]efendants were they to forego the settlement offer. Accordingly, the court finds that the settlement offer is fair and reasonable, given the uncertainty of the case and the time and money devoted to this action thus far." *Columbus Drywall & Insulation, Inc.*, 258 F.R.D. at 559–60.

### 4.     Stage of the Proceedings

"[C]ourts have a duty to ensure that the settlement does not 'come too early to be suspicious nor too late to be a waste of resources,' and that it is at 'a desirable point in the litigation to reach an agreement without further delay, expense, and litigation.'" *Equal Rights Ctr. v. Wash. Metro. Area Transit Auth.*, 573 F. Supp. 2d 205, 212-213 (D.D.C. 2008) (quoting *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 105 (D.D.C. 2004)).   The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin*, 391 F.3d at 537. "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (citation and internal quotation marks omitted).

While full discovery in the matter had not yet begun, Plaintiff gained a substantial understanding of the legal issues that would have an impact on this case when fully briefing Defendants' respective partial motions to dismiss.  As discussed previously, Plaintiff also reviewed millions of data entries related to the time that jobs were performed by putative class members and the compensation that they received in order to develop a detailed damages model from which Plaintiff could attempt to estimate the potential outcome in the action if they had been successful in obtaining class-wide damages at trial.  Plaintiff's counsel was thus in a strong

position to negotiate a fair settlement and advise Plaintiff and Current Opt-ins of the advantages and disadvantages of litigating through trial. This factor thus weighs in favor of preliminary approval. Courts often approve settlements at early stages of litigation. *Cotton v. Hinton,* 559 F.2d 1326, 1332 (5th Cir.1977) (affirming approval, of settlement with little formal discovery); *Mashburn v. Nat'l Healthcare, Inc.,* 684 F.Supp. 660, 669 (M.D.Ala.1988) (holding that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery is required to determine the fairness of the settlement.).[10]

## V.   ATTORNEY'S FEES, COSTS AND EXPENSES, AND SERVICE AWARDS

As set forth in the accompanying motions for attorney's fees and for service payments, Plaintiff believes that class counsel's request for attorneys' fees, costs and expenses, and the proposed service payments to Plaintiff and the Current Opt-Ins, are also fair and reasonable.

## VI.   THE PROPOSED FLSA SETTLEMENT IS FAIR AND REASONABLE

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the

---

[10] Plaintiff does not address the additional factor, "the substance and amount of opposition to the settlement," because notice has not yet issued to class members and therefore there is currently no opposition to the proposed settlement.

amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be. . . ." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, generally, are not subject to bargaining, waiver, or modification by contract or private settlement. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). The two limited circumstances in which FLSA claims may be compromised are (1) when the Secretary of Labor supervises the settlement pursuant to 29 U.S.C. § 216(c) or (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982).

When a plaintiff brings a proposed settlement of an FLSA claim before a court, the court must scrutinize the settlement to determine whether it is a fair and reasonable resolution of a *bona fide* dispute. *Lynn's Food*, 679 F.2d at 1354-55. If a settlement in an FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354. As discussed briefly below, and as Plaintiff will also set forth in her motion for final settlement approval, the FLSA settlement here "is a fair and reasonable resolution of a bona fide dispute."

Here, 30% of each proposed class members' settlement share is appropriated for their release and settlement of FLSA claims. Importantly, only those putative

FLSA Class members who actually submit a claim form to participate in the settlement will release their FLSA claims, and the FLSA claims of non-participating class members are not being settled in this action.  Given the risks of continued litigation of the FLSA claims, this is a reasonable settlement.  The potential risks included the possibility of a denial of conditional certification of the proposed FLSA Class, or the eventual decertification of any such conditionally certified collective, and the fact that Defendants may have contended, among other things, that the shorter two-year statute of limitations under the FLSA would have been appropriate, which would limit the any opt-in plaintiffs' possible recovery.  *See* 29 U.S.C. § 255(a).  Plaintiff and any opt-in plaintiffs also would have had to establish their status as employees entitled to the FLSA's protections under the "economic realities" test, which Defendants would have vigorously opposed.  *See Clincy v. Galardi S. Enterprises, Inc.*, 808 F. Supp. 2d 1326, 1343 (N.D. Ga. 2011) (quoting *Freund v. Hi–Tech Satellite, Inc.*, 185 Fed. Appx. 782, 783 (11th Cir. 2006)).  Defendants also would have contended that some members of the putative FLSA Class were, in some or all weeks, exempt from the overtime protections of federal law pursuant to the Motor Carrier Act exemption.  *See* 29 U.S.C. § 213 (b)(1).  The exemption states that employees whose duties affect the safety and operation of motor vehicles in interstate commerce are not entitled to overtime pay under the FLSA, except for those employees who work, in whole or in part, on motor vehicles

weighing 10,000 pounds or less. *See generally Botero v. Commonwealth Limousine Serv. Inc.*, 2013 WL 3929785, at \*12 (D. Mass. July 25, 2013).  And, were they successful at trial on their FLSA claims, Plaintiff would have sought liquidated damages in an amount equal to their back pay award, but Defendants also would have argued that they acted in good faith and that liquidated damages were not appropriate.  *See* 29 U.S.C. § 216 (permitting liquidated damages); 29 U.S.C. § 260 (providing the employer with a safe harbor to avoid liquidated damages where actions were undertaken "in good faith").  Given these risks, and as Plaintiff will explain in greater detail when she seeks final approval, the proposed settlement of FLSA claims is also fair and reasonable.

## VII.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her Unopposed Motion for Preliminary Approval of the Parties' Settlement Agreement, provisionally certify the settlement class, appoint Plaintiff's Counsel as Class Counsel, approve RG2 Claims Administration LLC as Settlement Administrator, and approve Plaintiff's Notice of Settlement.

Dated:        December 20, 2018.

/s/ Gilda Adriana Hernandez
Gilda A. Hernandez, *pro hac vice*
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**

1020 Southhill Dr., Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com

Jeffrey B. Sand
Ga. Bar No. 181568
**THE WEINER LAW FIRM LLC**
3525 Piedmont Road
7 Piedmont Center, 3rd Floor
Atlanta, Georgia 30305
Tel: (404) 205-5029
Fax: (866) 800-1482
js@atlantaemployeelawyer.com


Harold Lichten, *pro hac vice*
Matthew Thomson, *pro hac vice*
**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
(617) 994-5801
hlichten@llrlaw.com
mthomson@llrlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2018, I electronically filed the foregoing true and accurate copy of the **MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' SETTLEMENT AGREEMENT, PROVISIONALLY CERTIFY THE SETTLEMENT CLASS, APPOINT PLAINTIFF'S COUNSEL AS CLASS COUNSEL, APPROVE RG2 CLAIMS ADMINISTRATION LLC AS SETTLEMENT ADMINISTRATOR AND APPROVE PLAINTIFF'S NOTICE OF SETTLEMENT** with the Court using the CM/ECF system, and I hereby certify that I have thereby electronically served the document to the following:

David F. Root (Ga. Bar No. 614125)
Abby C. Grozine (Ga. Bar No. 542723)
**CARLOCK COPELAND & STAIR, LLP**
191 Peachtree St., NE
Suite 3600
Atlanta, GA 30303
T: 404-522-8220
F: 404-523-2345
agrozine@carlockcopeland.com
droot@carlockcopeland.com

Emily A. Quillen, *pro hac vice*
**SCOPELITIS GARVIN LIGHT HANSON & FEARY, P.C.**
777 Main St.
Suite 3450
Fort Worth, TX 76102
T: 817-869-1700
F: 817-878-9472
equillen@scopelitis.com

39

Andrew J. Butcher, *pro hac vice*
**SCOPELITIS GARVIN LIGHT HANSON & FEARY, P.C.**
30 West Monroe St.
Chicago, IL 60603
Suite 600
T: 312-255-7200
F: 312-422-1224
abutcher@scopelitis.com

*Attorneys for Defendants Courier Express/Charlotte,*
*Inc., Courier Express/Raleigh, Inc., Courier Express*
*Freight, Inc., and Courier Express US, Inc.*

Lisa A. Schreter (Ga. Bar No. 629852)
Richard W. Black (Ga. Bar No. 355846)
**LITTLER MENDELSON, PC**
3344 Peachtree Road, NE
Suite 1500
Atlanta, GA 30326
T: 404-233-0330
F: 404-233-2361
lschreter@littler.com

Michael S. McIntosh, pro hac vice
**LITTLER MENDELSON, PC**
1650 Tysons Blvd.
Suite 700
McLean, VA 22102
T: 703-286-3118
mmcintosh@littler.com

*Attorney for Defendant IDEXX Pharmaceuticals, LLC*

Respectfully submitted,

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez, *pro hac vice*
THE LAW OFFICES OF GILDA A.

HERNANDEZ, PLLC
1020 Southhill Dr., Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com

Jeffrey B. Sand
Ga. Bar No. 181568
**THE WEINER LAW FIRM LLC**
3525 Piedmont Road
7 Piedmont Center, 3rd Floor
Atlanta, Georgia 30305
Tel: (404) 205-5029
Fax: (866) 800-1482
js@atlantaemployeelawyer.com

Harold Lichten, *pro hac vice*
Matthew Thomson, *pro hac vice*
**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
(617) 994-5801
hlichten@llrlaw.com
mthomson@llrlaw.com

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rules 5.1(C) and 7.1(D), I certify that the foregoing is typewritten using Times New Roman font, fourteen (14) point type.

*/s/ Gilda Adriana Hernandez*