IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| TRISH KINCAID, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:18-cv-00707-AT |
| COURIER EXPRESS/CHARLOTTE, INC., COURIER EXPRESS/RALEIGH, INC., COURIER EXPRESS FREIGHT, INC., COURIER EXPRESS US, INC., and IDEXX PHARMACEUTICALS, LLC, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF ATTORNEYS' FEES AND <u>REIMBURSEMENT OF COSTS AND EXPENSES</u>**

i

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................... 1

   I.    Plaintiff's Counsel Are Entitled to a Reasonable Fee of One Third of the Settlement Fund. ........................................................... 3

   II.   The *Johnson* and *Camden I* Factors Support Class Counsel's Requested Attorneys' Fee Award. ....................................................... 5

   III.   Plaintiff's Counsel's Time and Labor. ............................................... 7

        A.   Initial Investigation and Briefing .............................................. 7

        B.   Substantial Briefing on Defendants' Motions to Dismiss and Plaintiff's Motion for Conditional Certification ....................... 8

        C.   The Parties' Settlement Negotiations ....................................... 8

        D.   Novelty and Difficulty of the Questions Involved and Skill Requisite to Perform the Legal Service Properly .................... 10

        E.   The Customary Fee and Whether the Fee is Fixed or Contingent ............................................................................ 11

        F.   The Amount Involved and the Results Obtained .................... 13

        G.   The Experience, Reputation and Ability of the Attorneys ....... 14

        H.   The "Undesirability" of the Case ........................................... 15

        I.   The Nature and Length of the Professional Relationship with the Client ...................................................................... 15

        J.   Awards in Similar Cases ......................................................... 16

        K.   Additional Factors .................................................................. 16

   IV.   The Lodestar Cross Check Further Supports an Award to Plaintiff's Counsel of One-Third of the Settlement Fund. ................. 18

   V.   Plaintiff's Counsel Are Entitled to Reimbursement of Reasonable Costs and Expenses Under the Settlement Agreement. .................... 20

CONCLUSION ........................................................................................... 21

ii

# TABLE OF AUTHORITIES

## Cases

*Allapattah Servs., Inc. v. Exxon Corp.*
454 F. Supp. 2d 1185 (S.D. Fla. 2006) ......................................................... 10, 16, 21

*Ansoumana v. Gristede's Operating Corp.*
201 F.R.D. 81 (S.D.N.Y. 2001)....................................................................... 15

*Atkinson v. Wal-Mart Stores, Inc.*
2011 WL 6846747 (M.D. Fla. Dec. 29, 2011)......................................... 9, 14, 17, 19

*Barrentine v. Arkansas-Best Freight Sys., Inc.*
450 U.S. 728 (1981) ....................................................................................... 14

*Beckman v. KeyBank, N.A.*
293 F.R.D. 467 (S.D.N.Y. 2013)................................................................... 21, 24

Behrens v. Wometco Enterprises, Inc.
118 F.R.D. 534 (S.D.Fla.1988) .................................................................... 16

*Camden I Condo Ass'n, Inc., v. Dunkle*
946 F.2d 768 (11th Cir. 1991)..................................................................... 9, 11, 20

*Cassese v. Williams*
503 F. App'x 55 (2d Cir. 2012) .................................................................... 22

*Deposit Guar. Nat'l Bank v. Roper*
445 U.S. 326 (1980) ..................................................................................... 21

*Hensley v. Eckerhart*
461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983)......................... 22

*Lil' Joe Wein Music, Inc. v. Jackson*
2008 WL 2688117 (S.D. Fla. July 1, 2008)................................................. 24

*Morefield v. NoteWorld, LLC*
2012 WL 1355573 (S.D. Ga. Apr. 18, 2012)........................................... 8, 17, 18, 19

*Pinto v. Princess Cruise Lines, Ltd.*
513 F. Supp. 2d 1334 (S.D. Fla. 2007) ....................................................... 15, 16, 21

*Ressler v. Jacobson*
    149 F.R.D. 651 (M.D. Fla. 1992)........................................................................passim

*Seghroughni v. Advantus Rest., Inc.*
    2015 WL 2255278 (M.D. Fla. May 13, 2015)................................................9, 17, 19

*Tiro v. Public House Invs., LLC*
    2013 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sept. 10, 2013)......................................23

*Waters v. Int'l Precious Metals Corp.*
    190 F.3d 1291 (11th Cir.1999)..................................................................8, 17, 19, 22

*Wolff v. Cash 4 Titles*
    2012 WL 5290155 (S.D. Fla. Sept. 26, 2012)....................................................passim

**Statutes**

29 U.S.C. § 216(b)....................................................................................................15

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................15

# **INTRODUCTION**

In connection with Plaintiff's Unopposed Motion For Preliminary Approval Of Class And Collective Action Settlement; Provisional Certification Of The Settlement Class; Appointment Of Plaintiff's Counsel As Class Counsel; Approval Of Settlement Administrator; And Approval Of Plaintiff's Notice Of Settlement ("Plaintiff's Motion for Preliminary Approval"), filed simultaneously with this memorandum and consistent with the terms of the proposed Settlement Agreement, Plaintiff's Counsel The Law Offices of Gilda A. Hernandez, PLLC ("GAH"), Lichten & Liss-Riordan, P.C. ("LLR") and The Weiner Law Firm LLC ("Weiner") respectfully move this Court for an award of attorneys' fees in the amount of $533,333.33 (i.e., one-third of the Maximum Gross Settlement Amount (the "Settlement Fund")) and reimbursement of reasonable litigation costs and expenses of $13,972.29 incurred in prosecuting this action, should the Court grant final approval to the proposed Settlement Agreement.[1]

Over the past year, Plaintiff's Counsel have spent over 900 attorney, paralegal, and support staff hours prosecuting this case. *See* Declarations of Gilda A.

---

[1] Plaintiff has moved the Court for an award of attorneys' fees, costs and expenses now, so that the amount of such awards will be fully known to putative class members in advance of any final fairness hearing concerning the proposed settlement, the payment of any such awards should be contingent on the final approval of the proposed settlement.

Hernandez, Harold Lichten, and Jeffrey B. Sand in Support of Plaintiff's Unopposed Motions for Provisional Certification of the Settlement Class; Appointment of Plaintiff's Counsel as Class Counsel; Preliminary Approval of Class and Collective Action Settlement; Approval of Settlement Administrator; Approval of Attorneys' Fees and Reimbursement of Expenses, and Approval of Service Awards ("Hernandez Decl."), Dkt. 79, ¶ 24.

Plaintiff's Counsel's efforts to date have been without compensation and their entitlement to payment has been wholly contingent upon procuring an award for their clients and the proposed putative settlement classes. *See* Hernandez Decl. ¶ 31. For the reasons set forth below, Plaintiff's Counsel respectfully submit that the attorneys' fees, costs and expenses reimbursement they seek are fair and reasonable under the applicable legal standards and should be awarded following final approval of the parties' proposed settlement in light of the contingency risk undertaken and the result achieved in this case.[2]

---

[2] Pursuant to the Parties' proposed Settlement Agreement, Defendants do not oppose Plaintiff's Counsel's requests for an award of attorneys' fees, costs and expenses in the amounts requested. Thus, for purposes of the instant motion, Defendants take no position as to the propriety of any such award. Plaintiff acknowledges, however, that this does not necessarily mean Defendants would not oppose Plaintiff's Counsel's request absent the Parties' Settlement Agreement and Plaintiff recognizes that Defendants reserve the right to raise any argument with respect to the propriety of any award of attorneys' fees, costs and expenses to Plaintiff's Counsel that they might have otherwise undertaken in litigation, or to make arguments that are contrary to the positions taken by the Plaintiff in this memorandum, should the Court not grant final approval of the proposed settlement. Specifically, should the proposed

### I.   Plaintiff's Counsel Are Entitled to a Reasonable Fee of One-Third of the Settlement Fund.

Pursuant to the proposed Settlement Agreement, Plaintiff's Counsel are entitled to attorneys' fees to compensate them for their work in recovering alleged unpaid overtime wages and alleged illegal deductions on behalf of the putative class members should the proposed Settlement Agreement receive final approval.  That Settlement Agreement, for which Plaintiff simultaneously seeks preliminary approval by the Court, likewise provides that "Subject to approval from the Court, Class Counsel will receive from the Gross Settlement Amount attorneys' fees in the amount of one-third of the Gross Settlement Amount, plus reimbursement of litigation costs and expenses in the amount of $13,972.29."  *See* Dkt. No. 76-3 (Settlement Agreement) Art. IV, Sec. 4.  In addition, the parties' proposed Notice of Proposed Class and Collective Action Settlement ("Notice") to all Putative Settlement Class Members will state the following:

> Class Counsel has pursued the case on a contingent basis and has not received any payment of fees or any reimbursement of their out-of-pocket expenses related to the recovery on behalf of the Settlement classes. As part of the Settlement, subject to Court approval, Class Counsel will apply for fees in the amount of one-third of the Gross Settlement Amount ($533,333.33), plus reimbursement of litigation costs in the amount of $13,972.29. The

---

settlement not be approved and Plaintiff subsequently prevails and submits a fee petition, Defendants shall remain free to contest such a petition, including the accuracy, reasonableness, or necessity of any hours Plaintiff's Counsel purport to have spent prosecuting this action, the hourly rates they claim for such work, or the resulting "lodestar" they present.

Court may ultimately award less than the amounts Class Counsel request. The Court will make a final determination on the reasonableness of Class Counsel's application at a later date. Attorneys' fees, costs, and expenses will not be deducted from your estimated settlement payment, but a *pro rata* share of the awarded attorneys' fees will be allocated to you as income and reported on an I.R.S. Form 1099-Misc.  Class Counsel's Fees and expenses will be paid from the Gross Settlement Amount before any payment you receive is calculated.

*See* Dkt. 76-4 at p. 5 (Proposed Notice) ¶ 7.  Plaintiff asserts that if the Court, Settlement Administrator, and the parties' counsel receive no objections to the one-third or 33.33% payment of attorneys' fees, such lack of objections will also provide an indication of the reasonableness of the requested award and weighs in favor approving it.  *See Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) (the lack of objections to a request for attorneys' fees "is strong evidence of the propriety and acceptability of that request.").  Plaintiff's Counsel therefore believe their request for 33.33% of the Settlement Fund plus costs and expenses is reasonable and well within the range approved by courts in this Circuit in similar cases.  *See, e.g.*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1291 (11th Cir.1999) (awarding 33 1/3% of a settlement of $40 million); *Morefield v. NoteWorld, LLC*, No. 1:10-CV-00117, 2012 WL 1355573, at *5–6 (S.D. Ga. Apr. 18, 2012) (awarding 33 1/3% of a settlement of $1 million); *Atkinson v. Wal-Mart Stores, Inc.*, No. 8:08-CV-691-T-30TBM, 2011 WL 6846747, at *7 (M.D. Fla. Dec. 29, 2011) (awarding 33 1/3% of a settlement of $2 million); *Seghroughni v. Advantus Rest., Inc.*, No.

4

8:12-CV-2000-T-23TBM, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) (finding that an attorney's fee of one-third of the settlement fund "is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the [l]ead [c]ounsel's ability and experience in class action litigation, and fee awards in comparable cases"); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012), *report and recommendation adopted,* No. 03-22778-CIV, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012) (collecting cases and observing that "[t]he average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.").

## II.    The *Johnson* and *Camden I* Factors Support Plaintiff's Counsel's Requested Attorneys' Fee Award.

In *Camden I Condo Ass'n, Inc., v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991), the Eleventh Circuit determined that in cases where a common fund is created, attorneys' fees shall be based on "a reasonable percentage of the fund established for the benefit of the class," rather than on a lodestar analysis. "There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Id.* However, as a general rule, there is an upper limit of 50% of the fund, though larger percentages have been awarded in some cases. *Id.* at 774-75. The *Camden I* Court further determined that the twelve *Johnson* factors are appropriately used in determining percentage fees. *Id.* at 775. Those factors are:

5

(1) the time and labor required;

(2) the novelty and difficulty of the questions involved;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and the length of the professional relationship with the client, and

(12) awards in similar cases.

See *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1202 (S.D. Fla. 2006). "Other pertinent factors" articulated by the Eleventh Circuit include:

(1) the time required to reach a settlement;

(2) whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel;

(3) any non-monetary benefits conferred upon the class by the settlement; and

(4) the economics involved in prosecuting a class action.

*Camden I*, 946 F.2d at 775.  These factors weigh in favor of granting approval to Plaintiff's Counsel's attorneys' fee application.

## III.   Plaintiff's Counsel's Time and Labor.

### A.  *Initial Investigation and Briefing*

Plaintiff's Counsel spent significant effort to achieve the $1.6 million Settlement Fund. Before the initiation of this action, Plaintiff's Counsel conducted a lengthy and thorough investigation into the merits of the potential claims and defenses, in fact, several months before Plaintiff's Complaint was filed.  Hernandez Decl. ¶ 11.  This included investigation and legal research on the underlying merits of the North Carolina Wage and Hour Act class claims, the likelihood of obtaining liquidated damages and an extended FLSA statute of limitations, the proper measure of damages, and the likelihood of class certification.  *Id*.  Plaintiff's Counsel conducted in-depth interviews with the named and opt-in plaintiffs to determine the hours that they asserted working, the wages they were paid, and other information relevant to their claims.  *Id.* ¶ 12.  Plaintiff's Counsel also obtained and reviewed hundreds of personal documents and numerous other documents from named and opt-in plaintiffs related to their asserted employment with Defendants, including independent contractor agreements with the Courier Express Defendants, records of individual shifts including arrival and departure times for each stop, pay stubs,

letters, and asserted text messages from Defendants' managers. *Id.*

B. *Substantial Briefing on Defendants' Motions to Dismiss and Plaintiff's Motion for Conditional Certification*

Defendant IDEXX and the Courier Express Defendants each filed a separate motion to dismiss, both requiring a response from Plaintiff. Hernandez Decl. ¶ 13; *see also* Dkt. Nos. 52, 53, 57, 58. Plaintiff, meanwhile, filed a Motion for Conditional Certification as a Collective Action along with several declarations from the named and opt-in plaintiffs. Hernandez Decl. ¶ 14; *see also* Dkt. No. 54. This action was stayed for mediation only after Plaintiff's Counsel had thoroughly researched and briefed all pending motions. Hernandez Decl. ¶ 15.

C. *The Parties' Settlement Negotiations*

In June of 2018, Defendants proposed that the parties engage in mediation. *See* Hernandez Decl. ¶ 15. The parties negotiated a lengthy mediation agreement governing the mediation and providing parameters for the ultimate settlement agreement. *Id.* On June 13, 2018, the parties jointly moved to stay the instant proceedings in order to pursue mediation; the Court granted this motion. *Id; see also* Dkt. Nos. 67, 68. The parties signed the agreement to mediate on June 20, 2018, the terms of which also required the Courier Express Defendants to disclose time and payroll data for Plaintiff and all members of the putative class and/or collective to permit Plaintiff to conduct a data analysis and calculate possible damages. *See* Hernandez Decl. ¶ 15. Over the next several weeks, with the assistance of Plaintiff's

expert and damages analyst who conducted an analysis of that data, Plaintiff developed a detailed settlement demand, Defendants responded with their alternate interpretation of the data and settlement proposal, and the parties held several pre-mediation conference calls to discuss the data. *Id.*

The parties participated in an all-day mediation session in Atlanta, Georgia, conducted by an experienced class action mediator, Hunter Hughes. *See* Hernandez Decl. ¶ 16. At the mediation, the parties came to an agreement in principle regarding the proposed settlement and signed a term sheet memorializing their agreement, which included the Settlement Fund. Over the next several weeks, the parties continued to negotiate additional terms of the settlement and finalized the proposed Settlement Agreement on December 19, 2018.

In performing these tasks, Plaintiff's Counsel expended over 900 hours of attorney, paralegal, and staff member time – resulting in an aggregate lodestar of approximately $465,000. Hernandez Decl.¶¶ 28-29; Lichten Decl. ¶ 10; and Sand Decl. ¶ 6. Plaintiff's Counsel believe these hours are reasonable for a case like this one and compiled them from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case. Hernandez Decl. ¶ 30; Lichten Decl. ¶ 10; and Sand Decl. ¶ 6. Plaintiff's Counsel used a small team of primarily four attorneys, two partners and two associates, in order to minimize duplication of efforts and maximize billing judgment. Hernandez Decl. ¶ 26.

Moreover, the requested attorneys' fee is not based solely on time and effort already expended, rather, it is also meant to compensate Plaintiff's Counsel for time that *will be* spent administering the settlement in the future. Hernandez Decl. ¶¶ 34-35; *see Atkinson*, 2011 WL 6846747 at *6 (noting that "[t]he firms have spent additional time on this case since the settlement was given preliminary approval and will also spend a significant amount of additional time taking calls from class members, assisting them with their claim forms, and overseeing the distribution of the settlement funds.").

In Plaintiff's Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment. Hernandez Decl. ¶ 34. For example, Plaintiff's Counsel anticipate that as soon as Notice is mailed, Plaintiff's Counsel and staff will be required to respond to numerous putative class members' questions about the terms of the settlement and the amount of their settlement award. *Id.* As is common in wage and hour class actions, Plaintiff's Counsel expects to respond to more settlement class member inquiries after final approval, especially after checks are issued. *Id.*

D. <u>*Novelty and Difficulty of the Questions Involved and Skill Requisite to Perform the Legal Service Properly*</u>

Courts have recognized that wage and hour cases involve complex legal issues. "FLSA claims typically involve complex mixed questions of fact and law. . .

. These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).  Among FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as an "opt out" class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b).  Because the same set of operative facts are being applied and analyzed under both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum.  *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 90 (S.D.N.Y. 2001).  Moreover, the magnitude of this case – involving approximately 1,500 members of the putative Rule 23 class and FLSA collective– is significant and adds to the complexity.

   E. *The Customary Fee and Whether the Fee is Fixed or Contingent*

   "The 'customary fee' in a class action lawsuit is contingent, since virtually no individual plaintiff has a large enough monetary stake in the litigation to justify charging on an hourly basis." *Ressler*, 149 F.R.D. at 654.  The "inherent risks" involved in filing and prosecuting a class action on a contingency fee basis "weigh strongly in favor" of a request for attorneys' fees.  *See Wolff*, 2012 WL 5290155 at *1.  "A contingency fee arrangement often justifies an increase in the award of attorneys' fees.  This rule helps assure that the contingency fee arrangement endures.

If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client, given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1340 (S.D. Fla. 2007) (*quoting Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990)).  Plaintiff's Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk.  Hernandez Decl. ¶ 36.  Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. *Id.*  Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources.  *Id.*  Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  *Id.*  Plaintiff's Counsel stood to gain nothing in the event the case was unsuccessful.  *Id.*

"One-third of the recovery is considered standard in a contingency fee agreement." *Wolff*, 2012 WL 5290155 at *4.  *See also Allapattah Servs.,* 454 F. Supp. 2d at 1212 ("Substantial empirical evidence indicates that a one-third fee is a common benchmark in private contingency fee cases.") (quoting Theodore

Eisenberg and Geoffrey Miller, *Attorneys' Fees in Class Action Settlements an Empirical Study,* 1 Journal of Empirical Legal Studies at 34 (2004); *Pinto*, 513 F. Supp. 2d at 1341 ("Using data from 433 class actions, the [National Economic Research Associates'] study reports the following: "Regardless of case size, *fees average approximately 32 percent of the settlement.*" (emphasis in original)). For this reason, it is customary for courts in the Eleventh Circuit to grant requests for one-third of a Maximum Gross Settlement Amount as attorneys' fees in class action cases. *See, e.g., Waters,* 190 F.3d at 1291 (11th Cir.1999) (awarding 33 1/3% of a settlement of $40 million); *Morefield*, 2012 WL 1355573, at *5–6 (awarding 33 1/3% of a settlement of $1 million); *Atkinson*, 2011 WL 6846747, at *7 (awarding 33 1/3% of a settlement of $2 million); *Seghroughni*, 2015 WL 2255278, at *1 (awarding one-third of a settlement of $300,000); *Wolff*, 2012 WL 5290155, at *5-6 (awarding one-third of a recovery of $14 million).

F. *The Amount Involved and the Results Obtained*

"It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained." *Ressler*, 149 F.R.D. at 655. In this case, Plaintiff's Counsel, through their efforts, have secured a Settlement Fund of $1.6 million, a portion of which will be available to those putative class members who choose to participate in the settlement, with any uncashed checks will be designated to mutually agreed upon to *cy pres* beneficiaries rather than reverting to Defendants.

13

As in *Ressler*, "[t]he settlement achieved in this lawsuit eliminates the potential risk of non-recovery.   Instead of facing additional years off costly litigation, class members will now share in a substantial settlement fund." *See id.*   By Plaintiff's Counsel's estimation and using Plaintiff's damages model,[3] the Maximum Gross Settlement Amount represents a substantial amount of the putative class members' potential damages over the liability period.[4]   Weighing the benefits of the proposed settlement against the risks and delay[5] associated with proceeding in the litigation, Plaintiff believes the settlement provides a substantial benefit to the putative class members.

G. *The Experience, Reputation and Ability of the Attorneys*

Plaintiff's Counsel have substantial experience prosecuting large-scale wage and hour class and collective actions.   Hernandez Decl. ¶ 7 (listing cases); Lichten Decl. ¶ 5 (listing cases); and Sand Decl. ¶ 3 (listing cases).   Both Plaintiff's lead counsel have tried wage and hour collective and class actions before a jury and have

---

[3] Defendants' non-opposition to this motion does not equate to agreement with respect to any representation by Plaintiff or her counsel of the amount of alleged or calculated damages in this action, or Plaintiff's damage model.

[4] For further details on the assumptions Plaintiff's Counsel made to perform these calculations, Plaintiff's Counsel refers the Court to the Memorandum of Law in Support of Plaintiff's Motion for Preliminary Approval.

[5] Specifically, the named Plaintiff, the current opt-in plaintiffs, and those putative class members who choose to participate will be able to recover their alleged damages much sooner rather than after years of litigation.

extensive experience at both the trial and appellate levels.  Plaintiff's Counsel's skill and experience litigating wage and hour cases contributed to their obtaining a substantial settlement and weigh in favor of granting the requested fees.  *See Ressler*, 149 F.R.D. at 655 ("The standing and experience of plaintiff's counsel was an important factor in the settlement of this action. . . . This jury and appellate experience has earned the respect of defense counsel and no doubt contributed to the efficient prosecution and the settlement of this action."); *Morefield*, 2012 WL 1355573 at *5 ("[c]ounsel's knowledge and experience in class action litigation were necessary to shepherd the claims through the litigation process.").

## H. *The "Undesirability" of the Case*

A case may be classified as "undesirable" if no other plaintiff filed suit against the defendant.  *See Ressler*, 149 F.R.D. at 655.  Here, although the Courier Express Defendants do business in several states, no other plaintiff has filed suit, and Plaintiff's Counsel undertook this case on a contingent fee basis with no guarantee of payment.  Thus, without Plaintiff's Counsel's acceptance of the case, the putative class and collective members may not have achieved any recovery.

## I. *The Nature and Length of the Professional Relationship with the Client*

To the extent that this factor is relevant in the context of a class action, it weighs in favor of a larger fee where the plaintiff lacks a "track record" with the law firms that agree to handle her case.  *See Ressler*, 149 F.R.D. at 655.  Here,

Plaintiff's Counsel had no professional relationship with any of the named or current opt-in plaintiffs prior to this lawsuit. Hernandez Decl. ¶ 11.

## J. *Awards in Similar Cases*

As discussed in Section I above, Plaintiff's Counsel's request for one-third of the Settlement Fund is consistent with awards in other class actions. *See, e.g.*, *Waters*, 190 F.3d at 1291 (awarding 33 1/3% of a settlement of $40 million).[6]

## K. *Additional Factors*

Of the remaining *Johnson/Camden I* factors, preclusion of employment by the attorney due to acceptance of the case and time limitations imposed by the client or the circumstances do not apply in the instant case, though Plaintiff's Counsel notes that any time spent on one case is time not spent on another – a particular risk when a case is accepted on a contingent fee basis.

The additional *Camden I* factors are: (1) the time required to reach a settlement, (2) whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel; (3) any non-

---

[6] *See also Morefield,* 2012 WL 1355573, at *5–6 (awarding 33 1/3% of a settlement of $1 million); *Atkinson*, 2011 WL 6846747, at *7 (awarding 33 1/3% of a settlement of $2 million); *Seghroughni*, 2015 WL 2255278, at *1 (finding that an attorney's fee of one-third of the settlement fund "is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases"); *Wolff*, 2012 WL 5290155, at *5-6 (collecting cases and observing that "[t]he average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.").

monetary benefits conferred upon the class by the settlement; and (4) the economics involved in prosecuting a class action. *Camden I*, 946 F.2d at 775.

While most large collective/class actions (given their complexity), can take a number of years before a settlement is reached, in this matter, from the initial intake and meeting with named Plaintiff, investigation of potential claims, and filing of Plaintiff's complaint to the settlement agreement at mediation, this case was resolved in slightly over one (1) year from when it originated. *See* Hernandez Decl. 18.   In the view of Plaintiff's Counsel, the proposed settlement undoubtedly "provides the best relief possible to class members: the prompt payment of money." *See Ressler*, 149 F.R.D. at 656.  "The lack of significant objection from the [c]lass supports the reasonableness of the fee request," though at this stage in the litigation, putative class members have not yet had the opportunity to file objections to the settlement. *See Allapattah Servs.,* 454 F. Supp. 2d at 1204.

The final factor, the economics of a class action, weighs strongly in favor of granting Plaintiff's Counsel's request.  As discussed above, "[a] determination of a fair fee for [c]lass [c]ounsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by [c]lass [c]ounsel, and the fact that the risks of failure and nonpayment in a class action are extremely high. . . . If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and

money, especially in light of the risks of recovering nothing." *Pinto*, 513 F. Supp. 2d at 1339–40.  To maintain the role of class counsel as "private attorneys general" litigating to correct an alleged "public wrong" that would not be economically feasible to pursue on behalf of a single plaintiff, it is crucial that class counsel are awarded fees that adequately compensate them for the risk they assume.  *Id.* at 1334; *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980).  This is especially true in the context of the FLSA and North Carolina Wage and Hour Act, remedial statutes designed to protect workers' basic rights.  *See, e.g., Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) ("The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights.").

## IV.    The Lodestar Cross Check Further Supports an Award to Plaintiff's Counsel of One-Third of the Settlement Fund.

While the Eleventh Circuit has determined that a lodestar calculation is not the proper method of determining fees in common fund cases, courts may still refer to that figure for comparison.  *Waters*, 190 F.3d at 1298.  As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983).  In calculating the lodestar for cross check purposes, the need for exact records is not imperative and "hours documented by counsel need not be exhaustively scrutinized by the district court."  *Cassese v.*

18

*Williams*, 503 F. App'x 55, 59 (2d Cir. 2012).

Plaintiff's Counsel's request for one-third of the proposed Settlement Fund - $533,333.33 – is just slightly more than their calculated "lodestar." "[C]ourts in common fund cases regularly award multiples of 2 to 3 times lodestar in attorney's fees to reflect the quality of the work performed and the risks undertaken." *Ressler*, 149 F.R.D. at 657 (awarding a percentage-based award representing 1.16 times the lodestar). In fact, a multiplier of 1.4 is "well below those adopted by other courts as appropriate in awarding [c]lass [c]ounsel fees," while a lodestar of three appears to be the average. *Wolff*, 2012 WL 5290155 at *7.

Plaintiff's Counsel spent over 900 hours investigating, researching, litigating, negotiating, and settling this matter, as described in Plaintiff's Counsel's declarations. Hernandez Decl. ¶¶ 24; Lichten Decl. ¶ 10; and Sand Decl. ¶ 6. The hours Plaintiff's Counsel worked, at the rates set forth in the accompanying declarations, yield a lodestar calculated at approximately $465,000. Moreover, costs and expenses of $13,972.29 should be considered along with the lodestar for this cross-check, which leads to a total of $480,593.29[7]. Hernandez Decl. ¶ 35; Lichten Decl. ¶ 10; and Sand Decl. ¶ 6. Plaintiff's Counsel's request for an award that is just

---

[7] The costs and expenses include the expert witness fees for analyzing data provided by the Courier Express Defendants, and travel expenses for Plaintiff's counsel, as well as postage, long distance, and other similar costs.

slightly below their reported lodestar is reasonable, particularly in light of result achieved for the class. *See Tiro v. Public House Invs., LLC*, No. 11 Civ. 7679, 2013 U.S. Dist. LEXIS 129258, at *46-47 (S.D.N.Y. Sept. 10, 2013) (finding that where the lodestar was "virtually identical to the percentage of recovery," class counsel's request for 33 1/3% as attorney's fees was well within the range of reasonableness).

Furthermore, Plaintiff's Counsel's requested fee is reasonable because Plaintiff's Counsel will continue to perform work on this matter after final approval is granted, without receiving any additional payment. Among other things, Plaintiff's Counsel will be required to prepare a motion for final approval of the settlement and all other related documents, attend the final fairness hearing, answer class member questions (especially after the fund is distributed), answer questions from the claims administrator, and negotiate and possibly litigate disagreements with Defendants about the administration of the settlement and distribution of the Settlement Fund.   Hernandez Decl. ¶¶ 34-35.   In light of the fact that Plaintiff's Counsel will likely perform additional work after the final approval hearing, Plaintiff's Counsel's request is "even more reasonable than it appears at first glance." *Beckman*, 2013 WL 1803736, at *14.

## V.   Plaintiff's Counsel Are Entitled to Reimbursement of Reasonable Costs and Expenses Under the Settlement Agreement.

Plaintiff's Counsel request reimbursement of $13,972.29 in costs and expenses to be paid from the Settlement Fund, in addition to the attorneys' fees

requested above.  Hernandez Decl. ¶ 35; Lichten Decl. ¶ 10; and Sand Decl. ¶ 6.   As part of an award of attorneys' fees, a prevailing party may be awarded "their litigation costs which include reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to fee-paying clients, so long as these costs are incidental and necessary to the litigation." *Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-20079-CIV, 2008 WL 2688117, at *14 (S.D. Fla. July 1, 2008). Here, Plaintiff's Counsel's costs and expenses  of $13,972.29 were incidental and necessary to the representation of the putative class members.  Hernandez Decl. ¶35. These costs and expenses include court fees, mediation fees, and copies and exemplification of necessary papers. *Id.*

## CONCLUSION

For the reasons set forth above, Plaintiff's Counsel respectfully request that the Court grant their Unopposed Motion for Preliminary Approval of Attorneys' Fees and Reimbursement of Costs and Expenses, and enter an Order: (i) awarding Plaintiff's Counsel attorneys' fees in the amount of $533,333.33, which represents one-third of the Maximum Gross Settlement Amount, should the proposed Settlement Agreement receive final approval and become effective; and (ii) reimbursing $13,972.29 in litigation costs and expenses that Plaintiff's Counsel incurred, should the proposed Settlement Agreement receive final approval and become effective.

Respectfully submitted, this December 20, 2018.

/s/ Gilda Adriana Hernandez
Gilda A. Hernandez (NCSB No. 36812)
*pro hac vice*
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Tel:  919 741-8693
Fax:  919 869-1853
ghernandez@gildahernandezlaw.com

Jeffrey B. Sand
Ga. Bar No. 181568
**THE WEINER LAW FIRM LLC**
3525 Piedmont Road
7 Piedmont Center, 3rd Floor
Atlanta, Georgia 30305
Tel: (404) 205-5029
Fax: (866) 800-1482
js@atlantaemployeelawyer.com

Harold Lichten, *pro hac vice*
Matthew Thomson, *pro hac vice*
**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
(617) 994-5801
hlichten@llrlaw.com
mthomson@llrlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2018, the foregoing **PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** was served in accordance with the Federal Rules of Civil Procedure on the following:

David F. Root (Ga. Bar No. 614125)
Abby C. Grozine (Ga. Bar No. 542723)
**CARLOCK COPELAND & STAIR, LLP**
191 Peachtree St., NE
Suite 3600
Atlanta, GA 30303
T: 404-522-8220
F: 404-523-2345
agrozine@carlockcopeland.com
droot@carlockcopeland.com

Emily A. Quillen, *pro hac vice*
**SCOPELITIS GARVIN LIGHT HANSON & FEARY, P.C.**
777 Main St.
Suite 3450
Fort Worth, TX 76102
T: 817-869-1700
F: 817-878-9472
equillen@scopelitis.com

Andrew J. Butcher, *pro hac vice*
**SCOPELITIS GARVIN LIGHT HANSON & FEARY, P.C.**
30 West Monroe St.
Chicago, IL 60603
Suite 600
T: 312-255-7200
F: 312-422-1224
abutcher@scopelitis.com

23

*Attorneys for Defendants Courier Express/Charlotte, Inc., Courier Express/Raleigh, Inc., Courier Express Freight, Inc., and Courier Express US, Inc.*

Lisa A. Schreter (Ga. Bar No. 629852)
Richard W. Black (Ga. Bar No. 355846)
**LITTLER MENDELSON, PC**
3344 Peachtree Road, NE
Suite 1500
Atlanta, GA 30326
T: 404-443-3515
lschreter@littler.com
rblack@littler.com

Michael S. McIntosh, *pro hac vice*
**Littler Mendelson, PC**
Suite 700
1650 Tysons Blvd.
McLean, VA 22102
T: 703-286-3118
mmcintosh@littler.com

*Attorney for Defendant IDEXX Pharmaceuticals, LLC*

Respectfully submitted,

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez, *pro hac vice*
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Dr., Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com

Jeffrey B. Sand
Ga. Bar No. 181568

**THE WEINER LAW FIRM LLC**
3525 Piedmont Road
7 Piedmont Center, 3rd Floor
Atlanta, Georgia 30305
Tel: (404) 205-5029
Fax: (866) 800-1482
js@atlantaemployeelawyer.com

Harold Lichten, *pro hac vice*
Matthew Thomson, *pro hac vice*
**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
(617) 994-5801
hlichten@llrlaw.com
mthomson@llrlaw.com