IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| TRISH KINCAID, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 1:18-CV-00707-AT |
| COURIER EXPRESS/CHARLOTTE, INC., COURIER EXPRESS/RALEIGH, INC., COURIER EXPRESS FREIGHT, INC., COURIER EXPRESS US, INC., and IDEXX PHARMACEUTICALS, LLC, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE COLLECTIVE AND CLASS ACTION SETTLEMENT, ORDER OF DISMISSAL WITH PREJUDICE

Plaintiff Trish Kincaid ("Plaintiff") asserts that she and similarly situated individuals are former and current couriers that performed pick-up and delivery services for Defendants Courier Express/Charlotte, Inc., Courier Express/Raleigh, Inc., Courier Express Freight, Inc., Courier Express US, Inc. (the "Courier Express Defendants"), which contract with other companies desirous of these services, such as IDEXX Pharmaceuticals, LLC ("IDEXX") (Courier Express Defendants and IDEXX are referred to herein collectively as "Defendants"). She asserts that the Courier Express Defendants violated the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201 et seq, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 et seq, by: (1) misclassifying Plaintiff and putative class and collective members as independent contractors; (2) failing to lawfully compensate Plaintiff and putative class and collective members for all hours worked; (3) failing to pay Plaintiff and putative class and collective members all owed and earned wages; and (4) subjecting Plaintiff and putative class and collective members to unlawful deductions and/or withholdings. Under the FLSA, Plaintiff sought to recover on her behalf, as well as on behalf of a putative collective of allegedly similarly situated individuals who filed consents to participate in this action as party plaintiffs.   Under the NCWHA, Plaintiff sought to recover on her behalf, as well as on behalf of a Rule 23 class of individuals, consisting of individuals who worked for the Courier Express Defendants as couriers, unpaid wages, reimbursement of unlawful withholdings, attorneys' fees and costs, interest, and liquidated damages.

The Parties have engaged in significant motion practice.  While full, class-wide merits discovery had not yet begun, the Parties engaged in substantial briefing prior to any ruling on conditional certification, including the Courier Express Defendants' and IDEXX's separate motions to dismiss and Plaintiff's motion for conditional certification of an FLSA collective.  Soon after the filing of Plaintiff's motion for conditional certification, the Parties agreed to participate in mediation, negotiated a detailed mediation agreement, and jointly moved to stay proceedings in

order to pursue mediation. Pursuant to the Parties' mediation agreement, the Courier Express Defendants provided to Plaintiff the necessary time and payroll data for Plaintiff's retained data expert and paralegals to conduct a data analysis and calculate possible damages for Plaintiff and other allegedly similarly situated individuals.

On August 8, 2018, the Parties met with Mediator Hunter Hughes in Atlanta, Georgia. With the assistance of the mediator, Mr. Hughes, and following an exchange and review of extensive documentation and additional intense settlement negotiations, the Parties reached a tentative settlement agreement. After months of further negotiation and extensive drafting and revisions by all Parties, Defendants and Plaintiff reached the Settlement Agreement of Class and Collective Action and Release of Claims ("Settlement Agreement") on December 19, 2018. Dkt. 76-3.

On January 31, 2019, this Court entered an Order, provisionally approving Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement consistent with the Settlement Agreement, to (1) provisionally certify the Rule 23 Settlement Class and an FLSA settlement collective; (2) appoint Plaintiff's Counsel as Class Counsel; (3) approve the appointment of RG2 Claims Administration LLC ("RG2"), as settlement administrator; and (4) approve the proposed Notice and Claim Forms. Dkt. 87-89.

On February 22, 2019, RG2 sent the Court-approved Notice and Claim Forms via first class mail and text message to all 1,888 Rule 23 Settlement Class Members

and Putative FLSA Collective Members informing them of their rights under the Settlement, including but not limited to the right to object or to request exclusion from the settlement if they were a putative member of the state law class certified (for settlement purposes) under Federal Rule of Civil Procedure 23, and of class counsel's intention to seek up to a one-third of the settlement fund for attorneys' fees and expenses. *See* Dkt. 95 at ¶ 6;[1] *see also* Dkts. 76-4. Plaintiff filed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Service Awards ("Motion for Service Awards"). Dkts. 77, 77-1, 77-2, 78, 78-1, and 78-2. Consistent with the Settlement Agreement, Defendants did not oppose either of these motions and did not object to Plaintiff's requests for attorneys' fees, costs, or service awards. Significantly, only two (2) Putative Rule 23 Settlement Class Members requested exclusion, and none objected to the Settlement.   Dkt. 95 at ¶¶ 14-15.

On July 23, 2019, Plaintiff filed an Unopposed Motion for Final Approval of the Collective and Class Action Settlement ("Motion for Final Approval"). Dkt. 94. The Court held a fairness hearing on July 26, 2019. No Class Member appeared or objected to the Settlement at the fairness hearing. At the Fairness Hearing, the Parties agreed to extend the deadline for Putative Rule 23 Settlement Class Members

---

[1]*See* Dkt. 95, Declaration of Melissa Baldwin, RG/2 Claims Administration LLC ("RG/2") Director of Claims.

and Putative FLSA Collective Members to cure deficient Claim Forms to August 2, 2019. The Parties further agreed that any Claim Forms received by RG2 after the Claims Deadline of June 21, 2019 but before August 2, 2019 would be deemed timely received. The Court ordered the Parties to submit a Proposed Order on or before August 8, 2019, setting forth the final number of Participating Rule 23 Settlement Class Members and Participating FLSA Collective Members. As of the date of this Order, the Net Settlement Fund will be allocated among 722 Participating Rule 23 Settlement Class Members and Participating FLSA Collective Members. As of August 8, 2019, there are 9 Putative Rule 23 Settlement Class Members and Putative FLSA Collective Members who failed to submit a valid Claim Form. The Parties have agreed that if a valid Claim Form is received by RG2 from each of these 9 Settlement Class Members and Participating FLSA Collective Members by August 16, 2019, then those Claim Forms will be considered timely for purposes of inclusion in the allocation of the Net Settlement Fund.

Having considered the Plaintiff's Unopposed Motion for Final Approval, her Unopposed Motion for Attorneys' Fees and Expenses, her Unopposed Motion for Service Awards, the supporting declarations, the oral argument presented at the July 26, 2019 fairness hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the July 26, 2019 fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

## APPROVAL OF THE SETTLEMENT AGREEMENT

1.    The Court hereby grants Plaintiff's Motion for Final Approval and finally approves the Settlement as set forth in the Settlement Agreement. Dkt. No. 76-3.[2]

2.    Rule 23(e) requires court approval for class action settlements to ensure that it is procedurally and substantively "fair, reasonable and adequate." Fed. R. Civ. P. 23(e).  To determine procedural fairness, courts examine the "negotiating process leading to the settlement."  *Wal-Mart Stores, Inc. v. Visa USA. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

3.    Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits.  *Wal-Mart Stores,* 396 F.3d at 116 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.,* 2005 U.S. Dist. LEXIS 10848 at *18 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."); *Hall v.*

---

[2] Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement. Dkt. 76-3

*Higher One Machs., Inc.*, 2016 U.S. Dist. LEXIS 131009, at *5 (E.D.N.C. Sep. 26, 2016) (providing, in a hybrid FLSA and NCWHA action, that there is a "strong judicial policy in favor of settlements, particularly in the class action context.") (citations omitted); *Velazquez v. Burch Equip., LLC*, 2016 U.S. Dist. LEXIS 29426, at *3 (E.D.N.C. Mar. 8, 2016) (same); *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89136, at *27 (E.D. Va. June 23, 2009) ("Litigants should be encouraged to determine their respective rights between themselves and there is an overriding public interest in favor of settlement, particularly in class action suits.")

4.    "[A] strong presumption of fairness attaches to a settlement agreement when it is the result of [. . . ] arm's-length negotiation." *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 1:00-CV-2838-WBH, 2008 WL 11336122, at *8 (N.D. Ga. Oct. 20, 2008), *quoting In re Harnischfeger Indus., Inc.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002)." Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Coils. Holding Corp. Sec. Litig.,* No. 05 Civ. I 0240, 2007 U.S. Dist. LEXIS 57918 at *12 (S.D.N.Y. July 27, 2007).

**Procedural Fairness**

5.    The Settlement is procedurally fair, because it was reached through vigorous, arms-length negotiations and after experienced counsel had evaluated the merits of Plaintiff's claims. *See Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at

*2 (S.D. Fla. June 15, 2010); *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 11336122, at *8 (N.D. Ga. Oct. 20, 2008) ("Courts often focus on whether the settlement resulted from "arms-length negotiations" between counsel possessed of "experience and ability ... necessary to effective representation of the class's interests."); *see also Robinson*, 2013 U.S. Dist. LEXIS 83414, at *12 (D. Md. June 13, 2013); *In re Dollar Gen. Stores FLSA Litig.*, 2011 U.S. Dist. LEXIS 98162, at *12 (E.D.N.C. Aug. 22, 2011); *Toure v. Amerigroup Corp.,* 2012 U.S. Dist. LEXIS 110300 at *7 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs "conducted a thorough investigation . . . [and] enlisted the services of an experienced employment [law] mediator"); *Diaz v. Eastern Locating Serv., Inc.,* 2010 U.S. Dist. LEXIS 139136 at *10 (S.D.N.Y. Nov. 29, 2010).

6.    Class Counsel conducted thorough investigations and evaluated the claims and defenses, engaged in substantial motion practice, and reached a settlement after a mediation between the Parties.  *See generally* Dkts. 76, 76-2, 79-81.

7.    On August 8, 2018, the Parties participated in a full-day mediation session with an experienced employment mediator. Dkt. 79.  Over the next several months, the Parties continued to negotiate additional terms of the settlement, which they memorialized in the Settlement Agreement.  *See* Dkt. 76-3.  These arm's-length

negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the Settlement meets the requirements of due process. Moreover, there is no evidence whatsoever of any coercion or collusion or any other improper dealing that would lead to a finding that the negotiations were in any way unfair. *In re AOL Time Warner ERISA Litig.*, 2006 WL 2789862, at *5 (S.D.N.Y. Sept 27, 2006) ("In light of the substantial evidence that settlement negotiations were conducted at arms-length without any hint of collusion, the [c]ourt credits the [s]ettlement with a presumption of fairness.").

### **Fair, Adequate, and Reasonable**

8.    The settlement is fair, adequate, and reasonable.  All of the factors set forth in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)*,* which provides the analytical framework for evaluating whether a class action settlement is ultimately fair, adequate, and reasonable, weigh in favor of final approval.

9.    Courts in this Circuit look to six factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986.

10.    Success at trial is not guaranteed.  "In complex, multi-year class actions,

the risks inherent in the litigation are immense." *In re MI Windows & Doors Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 95889, at *8 (D.S.C. July 23, 2015) (citations omitted).  Indeed, "settlement must be evaluated taking into account the uncertainty and risks involved in litigation and in light of the strength of the claims and possible defenses." *Id.* at *38 (citations omitted); *see also De La Riva v. Houlihan Smith & Co., Inc.*, 2014 WL 7053772, at *2 (N.D. Ill. Dec. 12, 2014) (noting "Courts have recognized that class wage-and-hour cases [] are more complex and require greater skill to litigate."); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 559-60 (N.D. Ga. 2007) ("Plaintiffs do not have any guarantee that they will receive a larger recovery from the [s]ettling [d]efendants were they to forego the settlement offer. Accordingly, the court finds that the settlement offer is fair and reasonable, given the uncertainty of the case and the time and money devoted to this action thus far.").  In the absence of the proposed settlement, the Parties will be required to resume expensive litigation, including beginning the process of formal discovery.  Moreover, Plaintiff would still have to overcome Defendants' arguments against conditional certification of a putative FLSA collective and Rule 23 class certification of the putative state law class.  Therefore, the first *Bennett* factor weighs in favor of final approval.

11.    "In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that plaintiffs could recover at trial

and combine this with an analysis of plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries." *See Columbus Drywall & Insulation, Inc.*, 258 F.R.D. 559. The Gross Settlement Amount constitutes 46% of the estimated possible recovery in this case. The Gross Settlement Amount is within the range of settlement amounts that are often approved in wage-and-hour class actions. *See id.* (approving settlement even though the amount "does not represent a large fraction of the potential recovery at trial"); *Norris v. Lake Conway Landscaping of Orlando, Inc.*, No. 6:14-CV-1512-ORL-37, 2015 WL 3632314, at *2 (M.D. Fla. June 10, 2015) (holding that a compromise for 41.6% of the total damages initially claimed by plaintiff was reasonable due to "bona fide disputes" concerning FLSA provisions, such as the applicability of the § 213(b)(3) exemption); *DeGraff v. SMA Behavioral Health Servs., Inc.*, 945 F. Supp. 2d 1324, 1328 (M.D. Fla. 2013) (approving FLSA settlement of $5,000, plus $3,333.33 in attorneys' fees, for a plaintiff who had estimated her damages at $88,000, due to bona fide disputes); *Tobar v. Khan*, No. 6:10-CV-239, 2011 WL 564588, at *2 (M.D. Fla. Feb. 1, 2011), *report and recommendation adopted,* No. 6:10-CV-239-ORL-22, 2011 WL 397898 (M.D. Fla. Feb. 2, 2011) (approving an FLSA settlement representing approximately one-fifth of the plaintiff's asserted damages); *Moreyra v. Fresenius Med. Care Holdings, Inc.*, 2013 WL 12248139, at *3 (C.D. Cal. Aug. 7, 2013) (Rule 23 settlement approval where gross settlement amount was "approximately 32 percent

of the lost wages"); *Glass v. UBS Fin. Serv., Inc.,* 2007 WL 2216862, at *4 (N.D. Cal. Jan. 26, 2007) (approving settlement in wage class action for 25 to 35% of the claimed damages); *see generally In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000) (finding a recovery of one-sixth, or approximately 17% of the potential recovery, to be fair under the circumstances); *In re Currency Conversion Fee Antitrust Litig.,* No. 01 MDL 1409, 2006 WL 3247396 at *6 (S.D.N.Y. Nov.8, 2006) (approving settlement of "roughly 10-15%" of the allegedly illegal fees collected from the class.). Accordingly, the second and third *Bennett* factors weigh in favor of final settlement.

12.    "Courts have recognized that class wage-and-hour cases [] are more complex and require greater skill to litigate." *De La Riva v. Houlihan Smith & Co., Inc.*, 2014 WL 7053772, at *2 (N.D. Ill. Dec. 12, 2014). "Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)." *Johnson v. Brennan*, 2011 WL 4357376, at *17 (S.D.N.Y. Sept. 16, 2011). The Parties have participated in sufficient document sharing to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Cotton v. Hinton,* 559 F.2d 1326, 1332 (5th Cir. 1977) (affirming approval, of settlement with little formal

discovery); *Mashburn v. Nat'l Healthcare, Inc.,* 684 F. Supp. 660, 669 (M.D. Ala. 1988) (holding that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery is required to determine the fairness of the settlement.). While full discovery in the matter had not yet begun, Plaintiff gained a substantial understanding of the legal issues that would have an impact on this case when fully briefing Defendants' respective partial motions to dismiss. Plaintiff also reviewed millions of data entries related to the time that jobs were performed by putative class members and the compensation that they received in order to develop a detailed damages model from which Plaintiff could attempt to estimate the potential outcome in the action if they had been successful in obtaining class-wide damages at trial. Plaintiff's counsel was thus in a strong position to negotiate a fair settlement and advise Plaintiff and Early Opt-ins of the advantages and disadvantages of litigating through trial. The fourth *Bennett* factor therefore weighs in favor of final approval.

13.    The class members' reaction to the Settlement was positive. The Notices sent to all Putative FLSA Collective Members and Putative Rule 23 Settlement Class Members included an explanation of the allocation formula that would be used to determine their individual share of the settlement. The Notice sent to the Putative Rule 23 Settlement Class also informed such individuals of the right to object to or exclude themselves from the Settlement and explained how to do so.

In total as of the date of this Order, there are 722 Participating Rule 23 Settlement Class Members and Participating FLSA Collective Members who submitted a valid and timely Claim Form in response to the Notice. Only two (2) Putative Rule 23 Settlement Class Members have requested exclusion, but none have objected to the Settlement. This favorable response demonstrates that the class approves of the Settlement, which further supports final approval. *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173, 2008 U.S. Dist. LEXIS 36093, at *19 (S.D.N.Y. May 1, 2008) (quoting *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001); *Deem v. Ames True Temper, Inc.*, 2013 WL 2285972, at *2 (S.D.W. Va. May 23, 2013).

## <u>APPROVAL OF THE FLSA SETTLEMENT</u>

14.    The Court hereby approves the FLSA collective action settlement.

15.    Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.,* 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling,* 493 U.S. 165 (1989); *see also McMahon v. Olivier Cheng Catering & Events, LLC,* 2010 U.S. Dist. LEXIS 18913, at *15 (S.D.N.Y. Mar. 2, 2010). Accordingly, the high standard for approval of a class action settlement under Rule 23 does not apply to FLSA

settlements.

16.    Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes.  *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *McMahon,* 2010 U.S. Dist. LEXIS 18913, at \*15.  Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of a settlement.  *Lynn's Food Stores,* 679 F.2d at 1353-54.  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.  *Id* at 1354; *McMahon,* 2010 U.S. Dist. LEXIS 18913, at \*15.

17.    In this case, the Settlement was the result of a formal mediation and negotiation of counsel involving vigorous arm's-length settlement negotiations.  *See* Dkt. 79.  During the entire process, Plaintiffs and Defendants were represented by counsel experienced in wage and hour law. Here, 30% of each proposed settlement class member's share is appropriated for their release and settlement of FLSA claims. Given the risks of continued litigation of the FLSA claims, this is a reasonable settlement. Accordingly, the Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding that is fair and reasonable.

## DISSEMINATION OF NOTICE

18.    Pursuant to this Court's Order provisionally certifying the Rule 23 Settlement Class and preliminarily approving the Settlement, Dkt. No. 87, all

Putative FLSA Collective Members and Putative Rule 23 Settlement Class Members were sent Court-approved notice by first-class mail at his or her last known address and received informative text messages and phone calls.  Those Putative FLSA Collective Members and Putative Rule 23 Settlement Class Members who had not yet filed a Claim Form also received reminder text messages and phone calls, with updated information on the extended notice deadline.  In total, there are 722 Participating Rule 23 Settlement Class Members and Participating FLSA Collective Members who submitted a valid and timely Claim Form in response to the Notice. As of August 8, 2019, there are 9 Putative Rule 23 Settlement Class Members and Putative FLSA Collective Members who failed to submit a valid Claim Form. The Parties have agreed that if a valid Claim Form is received by RG2 from each of these 9 Settlement Class Members and Participating FLSA Collective Members by August 16, 2019, then those Claim Forms will be considered timely for purposes of inclusion in the allocation of the Net Settlement Fund.

19.    The Court finds that the Notice and Reminder Notice fairly and adequately advised Putative FLSA Collective Members and Putative Rule 23 Settlement Class Members of the terms of the settlement, as well as the right of Putative Rule 23 Settlement Class Members to opt out of or to object to the settlement, and to appear at the fairness hearing conducted on July 26, 2019.  Putative FLSA Collective Members and Putative Rule 23 Settlement Class Members were

16

provided with the best notice practicable under the circumstances.

20.     The Court further finds that the Notice and its distribution comported with all constitutional requirements, including those of due process.

## AWARD OF FEES AND COSTS TO CLASS COUNSEL AND SERVICE AWARDS TO PLAINTIFF AND EARLY OPT-INS

21.     The Court hereby grants Plaintiff's Motion for Attorneys' Fees and awards Class Counsel $533,333.33, which is one-third of the Gross Settlement Amount.

22.     Class Counsel's request for one-third of the Gross Settlement Amount is reasonable and consistent with the norms of class litigation in this circuit. *See, e.g.*, *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1291 (11th Cir.1999) (awarding 33 1/3% of a settlement of $40 million); *Morefield v. NoteWorld, LLC*, No. 1:10-CV-00117, 2012 WL 1355573, at *5–6 (S.D. Ga. Apr. 18, 2012) (awarding 33 1/3% of a settlement of $1 million); *Atkinson v. Wal-Mart Stores, Inc.*, No. 8:08-CV-691-T-30TBM, 2011 WL 6846747, at *7 (M.D. Fla. Dec. 29, 2011) (awarding 33 1/3% of a settlement of $2 million); *Seghroughni v. Advantus Rest., Inc.*, No. 8:12-CV-2000-T-23TBM, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) (finding that an attorney's fee of one-third of the settlement fund "is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the [l]ead [c]ounsel's ability and experience in class action litigation, and fee awards in comparable cases"); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV,

2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012), *report and recommendation adopted,* No. 03-22778-CIV, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012) (collecting cases and observing that "[t]he average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.").

23.    In applying the common fund method, the Supreme Court and Circuit Courts across the country have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendants. *See Boeing Co. v. Van Gernert, et al.,* 444 U.S. 472, 481-82 (1980); *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 437 (2d Cir. 2007); *Waters v. International Precious Metals Corp.,* 190 F.3d. 1291, 1296-97 (11th Cir. 1999); *Williams v. MGM-Pathe Communs. Co.,* 129 F.3d 1026 (9th Cir. 1997) (reversing district court award of 33 percent of the claimed fund and awarding attorneys' fees of 33 percent of the available fund); *see also Aros,* 2012 U.S. Dist. LEXIS 104429 at * 6.  Nevertheless, in this case none of the Gross Settlement Amount will revert back to Defendants.

24.    No Putative Rule 23 Settlement Class Member objected to Class Counsel's request for one-third of the Gross Settlement Amount, which also provides support for Class Counsel's fee request.

25.    The Court also awards Class Counsel reimbursement of $13,972.29 in

litigation costs or expenses in addition to fees.

26.     The attorneys' fees and the amount in reimbursement of expenses shall be paid from the Gross Settlement Amount in accordance with the Settlement Agreement.

27.     The Court finds reasonable service awards for Plaintiff Trish Kincaid, in the amount of $15,000 and the Early Opt-Ins, Matthew Kincaid, Brittnie Williams, and Scott Shelton, in the amount of $10,000 each.  These amounts shall be paid from the Gross Settlement Amount in accordance with the Settlement Agreement.

28.     Consistent with the terms of the Settlement Agreement, the Effective Date of the Settlement shall, in accordance with Section I, Paragraph 16 of the Settlement Agreement, be thirty-one (31) days after the date of this Order if no party files an appeal, writ, or other appellate proceeding opposing the Settlement.  If a party files any appeal, writ, or other appellate proceeding opposing the Settlement, the Effective Date of the Settlement shall be the day of the dismissal of any appeal, writ, or other appellate proceeding opposing the Settlement with no right to pursue further remedies or relief; and the issuance of a final appellate order upholding the Court's final order with no right to pursue further remedies or relief.  This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

## **SETTLEMENT ADMINISTRATOR**

29.    The Court confirms its prior Order appointing RG2 Claims Administration LLC. ("RG2") as the Settlement Administrator in this case, Dkt. No. 88, and the duties RG2 was previously ordered to perform therein in conjunction with any order grating final approval to the Settlement in this action.

30.    Consistent with the Court's prior Order appointing RG2 as Settlement Administrator, RG2 shall determine the total amount of its owns services and expenses in connection with the administration of the settlement in this action prior to the distribution of any amounts from the Gross Settlement Amount.

31.    Seven (7) business days after the Effective Date of the Settlement Agreement, Courier Express will remit the Gross Settlement Amount to RG2 for deposit into a qualifying, designated settlement fund pursuant to Section 468B of the Internal Revenue Code.

32.    Ten (10) business days after the Effective Date, RG2 shall distribute the funds by making the following payments in the order below:

- Paying Class Counsel one-third of the Gross Settlement Amount ($533,333.33) for attorneys' fees;
- Reimbursing Class Counsel for their costs and expenses in the amount of $13,972.29;; and
- Paying the Service Awards to Plaintiff Trish Kincaid in the amount of $15,000 and the service awards to the three Early Opt-ins in the amount of $10,000 each.

33.    Twenty-one (21) business days after the Effective Date, or as soon thereafter as practicable, RG2 will issue payment of the Individual Settlement

20

Amounts to Participating FLSA Collective Members and Participating Rule 23 Settlement Class Members, along with a letter approved by Class Counsel and Defense Counsel explaining that the Settlement has received final approval and the claims released by the recipient, along with the URL for a website where the recipient can access a copy of the order granting final approval. The checks remitting these payments shall include language, to be agreed upon by Class Counsel and Defense Counsel, below the line for the recipient to endorse the check acknowledging the Released Claims and acknowledging the release of FLSA claims.

34.    Settlement payments shall be made to each Participating Rule 23 Settlement Class Member and/or Participating FLSA Collective Member who RG2 determines submitted a valid and timely Claim Form, as required by the Settlement Agreement and the Court's order granting preliminary approval to the Settlement Agreement, Dkt. No. 88.

35.    This action, and the claims of Plaintiff, Early Opt-ins, Rule 23 Settlement Class Members, and Participating FLSA Collective Members, are dismissed with prejudice. Plaintiff, Early Opt-ins, Rule 23 Class Settlement Members, and Participating FLSA Collective Members are permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the Settlement Agreement. Dkt. 76-3, § VI(1)-(3), VIII(3). Specifically, as stated in the Settlement Agreement, this means:

- On the Effective Date, Plaintiff and Early Opt-ins, on behalf of themselves and any business entities through which they performed services on behalf of Defendant Releasees, and their heirs, trustees, executors, successors, administrators, assigns, and representatives, shall and do hereby forever release, discharge and agree to hold harmless the Defendant Releasees from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorney fees and costs), known or unknown, at law or in equity, and whether arising under federal, state, or other applicable law, which they may have against Defendants arising out of, related to, or in any way connected with, their engagement by, alleged employment with, or their work for Courier Express and/or IDEXX, including but not limited to the Released Claims and their claims arising under the FLSA, as well as any other claim arising out of any and all transactions, occurrences, or matters between Plaintiffs and Defendant Releasees prior to the Effective Date, except as prohibited by law, in accordance with the terms of Section VI(1) of the Settlement Agreement.

- On the Effective Date, each and every Rule 23 Settlement Class Member and Participating FLSA Collective Members, on behalf of themselves and any business entities through which they performed services on behalf of Defendant Releasees, and their heirs, trustees. executors, successors, administrators, assigns, and representatives, shall forever release, discharge, and agree to indemnify and hold harmless the Defendant Releasees of and from any and all Released Claims that any Rule 23 Settlement Class Member and/or Participating FLSA Collective Member has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, except to the extent that any such claim may not be waived as a matter of law, up to and including the date of this Order, in accordance with the terms of Section VI(2) of the Settlement Agreement.

- Additionally, Participating FLSA Collective Members, on behalf of themselves and any business entities through which they performed services on behalf of Defendant Releases, and their heirs, trustees, executors, successors, administrators, assigns, and representatives, in addition to the release of claims described in Section VI(2) of the Settlement Agreement, shall forever release, discharge, and agree to indemnify and hold harmless the Defendant Releasees of and from any and all claims arising under the Fair Labor Standards Act, as amended, 29

U.S.C. § 201, *et seq.*, which any Participating FLSA Collective Member has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, except to the extent that such claim may not be waived as a matter of law, up to and including the date of this Order, in accordance with the terms of Section VI(3) of the Settlement Agreement.

Dkt. 76-3, § VI(1)-(3).

36.    As further explained by the Settlement Agreement, the claims released by Plaintiff and Early Opt-ins "shall include, but not be limited to, any and all claims under the (a) Americans with Disabilities Act of 1990, 42 U.S. C. § 12101, *et seq.*, as amended; (b) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as amended; (c) Age Discrimination Act of 1991; (d) 42 U.S.C. § 1981, as amended; (e) Age Discrimination in Employment Act and the Older Workers Benefit Protection Act, 29 U.S.C. § 621, *et seq.*; (f) Fair Labor Standards Act, 209 U.S.C. § 201, *et seq.*, as amended; (g) Equal Pay Act of 1963, as amended; (h) Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, as amended; (i) Consolidated Omnibus Budget Reconciliation act (COBRA), 29 U.S.C. § 1161 *et seq.*; (j) Rehabilitation Act of 1973, as amended; (k) Family Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et eq.*; (l) National Labor Relations Act, 29 U.S.C. § 151, *et seq.*, as amended; (m) Workers Adjustment and Retraining Notification Act (WARN), 29 U.S.C. § 2100 *et seq.*; (n) North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, *et seq.*; (o) North Carolina Persons With Disabilities Protection Act, N.C. Gen. Stat. § 95-240, *et seq.*; (p) Retaliatory

Employment discrimination Act (REDA) N.C. Gen. stat. § 168A-1, *et seq.*; and (q) any and all other federal, state and local statutes, ordinances, regulations and other laws, and any and all claims based on constitutional, statutory, common law or regulatory grounds, as well as any other claims based on theories of wrongful or constructive discharge, breach of contract or implied contract, fraud, misrepresentation, and promissory estoppel or intentional and/or negligent infliction of emotional distress, or damages under any other federal, state, or local statutes, ordinances, regulations, rules or laws." Dkt. 76-3, § VI(1).

37. Pursuant to the Settlement Agreement, the Plaintiff, Early Opt-ins, all Rule 23 Settlement Class Members, and Participating FLSA Settlement Class Members are bound by all terms of the Settlement Agreement and this Order and are further barred from accepting, recovering, or receiving any back pay, liquidated damages, or other damages, or any other form of relief based on any claims asserted or settled in this action which may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Defendants. Dkt. 76-3, § VI(1)-(3).

38. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. Dkt. 76-3, § XI(6). The Parties shall abide by all terms of the Settlement

Agreement, which is incorporated herein, and this Order.

**It is SO ORDERED**, this __9th__ day of __August, 2019._____

_____
THE HONORABLE AMY TOTENBERG
UNITED STATES DISTRICT JUDGE

4816-8845-1231, v. 2